**In re T & D MANAGEMENT COMPANY, Debtor.**

**In re Veldon D. TAYLOR, Debtor.**

**In re Kay A. DRIGGS, Debtor.**

**Duane H. GILLMAN, Trustee, Plaintiff,**

v.

**BOARD OF TRUSTEES OF the ALPINE SCHOOL DISTRICT and John Does One Through Ten, Defendants.**

Bankruptcy Nos. 81C–02570, 81C–02568, 81C–02569.

Civ. No. 83PC–0889.

United States Bankruptcy Court, D. Utah.

June 8, 1984.

Steven T. Waterman, Watkiss & Campbell, Salt Lake City, Utah, for trustee, plaintiff.

James J. Cassity, Kirton, McConkie & Bushnell, Salt Lake City, Utah, for Board of Trustees of Alpine School District.

## MEMORANDUM OPINION ON MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

GLEN E. CLARK, Bankruptcy Judge.

### CASE SUMMARY

This case presents the question of whether or not a school district is a "governmen-

tal unit" within the meaning of 11 U.S.C. § 106(c), and, if so, whether such "governmental unit" is subject to the jurisdiction of this court in an adversary proceeding brought by the trustee under 11 U.S.C. §§ 548(a)(2) and 550.

## FACTS AND PROCEDURAL BACKGROUND

The trustee of the estates of these jointly administered Chapter 7 cases filed a complaint against the Board of Trustees of the Alpine School District, located in Utah County, Utah. The complaint alleges, as part of its cause of action under Sections 548(a)(2)[1] and 550[2] of the Bankruptcy Code, (1) that debtors made cash gifts of $4,520.20 either to the school district or to individuals who in turn "gifted" the money to the school district, (2) that the gifts were made within one year of the filing of debtors' petitions, (3) that when the gifts were made the debtors were insolvent, and (4) that the debtors received less than a reasonably equivalent value in exchange for the gifts. The trustee is seeking summary judgment for the recovery of this money on behalf of the debtors' estate.

The school district filed a motion to dismiss the trustee's complaint on the ground that this court lacks subject matter jurisdiction of the civil proceeding because the Eleventh Amendment to the United States Constitution[3] forbids this or any other fed-

1. Section 548(a)(2) provides:

   (a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor—

   .    .    .    .    .

   (2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
   (B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
   (ii) was engaged in business, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or
   (iii) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

2. Section 550 provides:

   (a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—
   (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
   (2) any immediate or mediate transferee of such initial transferee.
   (b) The trustee may not recover under section (a)(2) of this section from—
   (1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided; or
   (2) any immediate or mediate good faith transferee of such transferee.
   (c) The trustee is entitled to only a single satisfaction under subsection (a) of this section.
   (d)(1) A good faith transferee from whom the trustee may recover under subsection (a) of this section has a lien on the property recovered to secure the lesser of—
   (A) the cost, to such transferee, of any improvement made after the transfer, less the amount of any profit realized by such transferee from such property; and
   (B) any increase in value as a result of such improvement, of the property transferred.
   (2) In this subsection, 'improvement' includes—
   (A) physical additions or changes to the property transferred;
   (B) repairs to such property;
   (C) payment of any tax on such property;
   (D) payment of any debt secured by a lien on such property;
   (E) discharge of any lien against such property that is superior or equal to the rights of the trustee; and
   (F) preservation of such property.
   (e) An action or proceeding under this section may not be commenced after the earlier of—
   (1) one year after the avoidance of the transfer on account of which recovery under this section is sought; and
   (2) the time the case is closed or dismissed.

3. The Eleventh Amendment provides that:
   The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

eral court from exercising jurisdiction over this lawsuit.

The parties here have assumed, and therefore the court need not consider, that Article I, Section 8, Clause 4 (the bankruptcy clause) of the Constitution empowers Congress to permit a state to be sued under the provisions of the federal bankruptcy statute, notwithstanding the provisions of the Eleventh Amendment, in cases where the state consents to suit or otherwise waives its sovereign immunity.

## ISSUES

The parties have raised two issues for determination by the court: (1) whether the defendant school district is a "state" under Utah law and within the meaning of the Eleventh Amendment and a "governmental unit" within the meaning of Section 106(c) of the Bankruptcy Code; and (2) whether or not Congress intended to sweep away the Eleventh Amendment immunity of a "state" in an action by a trustee seeking recovery under 11 U.S.C. § 548(a)(2) and 550.[4]

## DISCUSSION

### A. The Eleventh Amendment Issue

The parties disagree on whether the Alpine School District is to be considered "one of the United States" for Eleventh Amendment purposes. But because the issues raised in this case can be resolved with reference to the Bankruptcy Code alone, without the necessity for constitutional interpretation, the court declines to determine whether or not Congress intended to nullify the sovereign immunity of the school district, vouchsafed by the Eleventh Amendment, in an action by a trustee seeking to recover property under Sections 548(a)(2) and 550 of the Code.

### B. The Section 106(c) Issue

■ The Alpine School District is a subdivision of the State of Utah and a creature of the Utah Legislature, pursuant to Article X of the Utah Constitution and Sections 53–4–1 et seq. of the Utah Code Annotated (1953, as amended). It is funded by state tax revenues pursuant to Sections 53–7–1 et seq. For these reasons, the court finds that the Alpine School District is a "governmental unit" within the meaning of Section 106(c) of the Bankruptcy Code.[5]

Since the school district does not assert any claim against the debtors in this case, 11 U.S.C. §§ 106(a) and (b)[6] do not apply. However, 11 U.S.C. § 106(c)[7] does apply to this action and can best be understood in light of its legislative history.

*Legislative History of Section 106(c).* The 1973 Bankruptcy Bill, proposed by the Commission on the Bankruptcy Laws of the United States, provided a broad waiver of the sovereign immunity of governmental units:

Section 1–104. Applicability of Act to United States, States, and Subdivisions. All provisions of this Act shall apply to the United States and to every department, agency, and instrumentality thereof, and to every state and every subdivi-

---

4. Cf. *In re Quern v. Jordan,* 440 U.S. 332, 345, 99 S.Ct. 1139, 1147, 59 L.Ed.2d 358 (1979).

5. See *In re Harris v. Tooele County School District,* 471 F.2d 218 (10th Cir.1973); *In re Unified School District No. 480 v. Epperson,* 583 F.2d 1118 (10th Cir.1978); and *In re Southerlin v. Goodworth,* C80–0320A, order granting in part and denying in part defendants' motion for summary judgment (D.Utah, June 30, 1982), where a Utah school district was found to be a "state" on the same grounds.

6. "(a) A governmental unit is deemed to have waived sovereign immunity with respect to any claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which such governmental unit's claim arose. (b) There shall be offset against an allowed claim or interest of a governmental unit any claim against such governmental unit that is property of the estate."

7. "(c) Except as provided in subsections (a) and (b) of the section and notwithstanding any assertion of sovereign immunity—(1) a provision of this title that contains 'creditor', 'entity', or 'governmental unit' applies to governmental units; and (2) a determination by the court of an issue arising under such a provision binds governmental units."

sion thereof except where otherwise specifically provided. This section does not render any branch or unit of the government eligible for relief as a petitioner except as provided in Chapter VIII, or subject to relief as a debtor upon an involuntary petition.[8]

The Commission's note to Section 1–104 stated that:

This section, with the exceptions indicated, answers the question whether all of the provisions of this Act are intended to apply to all subdivisions and instrumentalities [of a state].[9]

However, when William T. Plumb, a tax consultant to the Commission, testified before the House and Senate Judiciary Committees in 1975 and 1976, he expressed the following concerns about the effect Section 1–104 would have on state sovereign immunity:

Sections 1–104 and 2–201(a)(9),[10] when taken together, have the effect of permitting the bankrupt estate to sue the United States or a State in the Bankruptcy Court to recover overpayments of taxes. Today, it is necessary for the estate to go through the more time-consuming process of suing the United States in the District Court or the Court of Claims, and suing the State in whatever forum it provides for the purpose. Congress long ago submitted the Federal Government's affirmative claims for unpaid taxes to the jurisdiction of the Bankruptcy Court in order to speed the closing of estates, and it should not hesitate to do the same concerning claims for overpayments that the Government happens to have collected before bankruptcy. But I raise for your consideration the question whether Congress, even if it has the power,

should undertake to subject the States to suits for tax refunds (or other claims) in courts not of their own choosing. It is true that Congress has long exercised its bankruptcy power to regulate the manner of determining state claims for unpaid taxes, to fix their liens and priority, to bar those not timely presented, and to discharge their tax debtors. But the State in those situations is the moving party, appearing in the Bankruptcy Court in order to share in a fund of which the federal power has validly taken possession, or pursuing a debtor who has been freed of his debts pursuant to federal constitutional power. In the case of claims *against* the State, I suggest that, even if the constitutional power were clear—which it is not—a proper regard for the independence of State governments may outweigh the desirability of providing in the Bankruptcy Courts a possibly more speedy procedure than the States themselves provide for such determinations.[11]

The provisions of the 1973 Bankruptcy Bill were never passed into law; instead, H.R. 8200 was introduced. As reported by the House Committee on the Judiciary on September 8, 1977, Section 106 of H.R. 8200 provided that:

(a) A governmental unit that files a proof of claim under section 501 of this title is deemed to have waived sovereign immunity with respect to any claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which such governmental unit's claim arose.

(b) There shall be offset against an allowed claim or interest of a govern-

---

**8.** Report of the Commission on the Bankruptcy Laws of the United States, H.R.Doc. No. 93–137, 93 Cong., 1st Sess., Pt. II at 10 (1973).

**9.** *Id.*

**10.** These two sections granted bankruptcy courts jurisdiction of all "actions in which the trustee or other official under this Act was a party plaintiff or defendant".

**11.** *Hearings on H.R. 31 and H.R. 32 Before the Subcomm. on Civil and Constitutional Rights of the House Comm. on the Judiciary,* 94th Cong., 2d Sess., Ser. No. 27, Pt. 4, at 2034–35 (1976) (statement of William T. Plumb, Jr.) (emphasis in original). *Hearings on S. 235 and S. 236 Before the Subcomm. on Improvements in Judicial Machinery of the Senate Comm. on the Judiciary,* 94th Cong., 1st Sess., Pt. II, at 806 (1975). *See also* 88 Harv.L.Rev. 1469–74 (1975).

mental unit for which such governmental unit filed a proof of claim or interest under section 501 of this title any claim against such governmental unit that is property of the estate. This provision was much more limited than the similar provision in the 1973 bill. Where the 1973 bill waived the sovereign immunity of governmental units completely with respect to all other provisions of that act, H.R. 8200 waived sovereign immunity only when a governmental unit filed a proof of claim, and then only with respect to compulsory counterclaims and certain offsets in favor of estates.[12] Clearly there was concern in the House about the power of Congress to waive the sovereign immunity of the states. Although Section 106 of H.R. 8200 was intended to waive the sover-

eign immunity of states only in those instances where Congress has power to do so, no attempt was made to define the limits of Congress' power.

Congress did not attempt, either in H.R. 8200 or in S 2266 (the Senate's alternative legislation),[13] to waive the sovereign immunity of states in all instances. The limiting effect of Section 106 of H.R. 8200 was to allow the trustee to recover a preferential transfer "only if the taxing authority did not have sovereign immunity or had waived it under proposed 11 U.S.C. 106." [14] Taxing authorities would not be subject to actions to recover preferential transfers unless they had waived sovereign immunity by filing a claim.

The present version of Section 106(c) of the Bankruptcy Code was first added to the

---

**12.** This point was explained in the House Report on H.R. 8200: "Section 106 provides for a limited waiver of sovereign immunity in bankruptcy cases. Though Congress has the power to waive sovereign immunity for the Federal government completely in bankruptcy cases, the policy followed here is designed to achieve approximately the same result that would prevail outside of bankruptcy. Congress does not, however, have the power to waive sovereign immunity completely with respect to claims of a bankruptcy estate [sic] against a State, though it may exercise its bankruptcy power to prevent or phohibit [sic] State action that is contrary to bankruptcy policy."

"There is, however, a limited change in the result from the result that would prevail in the absence of bankruptcy; the change is two-fold and is within Congress' power vis-a-vis both the Federal Government and the States. First, the filing of a proof of claim against the estate by a governmental unit is a waiver by that governmental unit of sovereign immunity with respect to compulsory counterclaims, as defined in the Federal Rules of Civil Procedure, that is, counterclaims arising out of the same transaction or occurrence. The governmental unit cannot receive distribution from the estate without subjecting itself to any liability it has to the estate within the confines of a compulsory counterclaim rule. Any other result would be one-sided. The counterclaim by the estate against the governmental unit is without limit."

"Second, the estate may offset against the allowed claim of a governmental unit, up to the amount of the governmental unit's claim, any claim that the debtor, and thus the estate, has against the governmental unit, without regard to whether the estate's claim arose out of the same transaction or occurrence as the govern-

ment's claim. Under this provision, the setoff permitted is only to the extent of the governmental unit's claim. No affirmative recovery is permitted. Subsection (a) governs affirmative recovery."

"Though this subsection creates a partial waiver of immunity when the governmental unit files a proof of claim, it does not waive immunity if the debtor or trustee, and not the governmental unit, files proof of a governmental unit's claim under proposed 11 U.S.C. 501(c)."

"This section does not confer sovereign immunity on any governmental unit that does not already have immunity. It simply recognizes any immunity that exists and prescribes the proper treatment of claims by and against that sovereign." H.R.Rep. No. 95-595, 95th Cong., 1st Sess. 317 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6274.

**13.** S. 2266, as reported by the Senate Judiciary Committee, proposed a Section 106 identical to Section 106 of H.R. 8200. Senate Report 95-989, 95th Cong., 2d Sess. 29 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787, contains an explanation of Section 106 identical to the explanation in the House Report:

S 2266 also preserves sovereign immunity for tax authorities by excepting government tax claims from the preference rules, under which creditors who receive payments from the debtor under certain conditions shortly before a bankruptcy petition must return the payments for orderly administration of the estate. Senate Report 95-1106, 95th Cong.2d Sess. 6 (1978).

**14.** H.R.Rep. No. 95-595, at 373 (1977), *supra* note 10, U.S.Code Cong. & Admin.News 1978, p. 6329.

proposed compromise bill after H.R. 8200 and S. 2266 had been reported by their respective House and Senate Committees. The floor statements of Congressman Edwards and Senator Deconcini, delivered on September 28, 1978 and October 6, 1978, respectively, explain this final version of Section 106(c):

Section 106(c) relating to sovereign immunity is new. The provision indicates that the use of the term "creditor," "entity," or "governmental unit" in title 11 applies to governmental units notwithstanding any assertion of sovereign immunity and that an order of the court binds governmental units. The provision is included to comply with the requirement in case law that an express waiver of sovereign immunity is required in order to be effective. Section 106(c) codifies *In re Gwilliam*, 519 F.2d 407 (9th Cir., 1975), and *In re Dolard*, 519 F.2d 282 (9th Cir., 1975), permitting the bankruptcy court to determine the amount and dischargeability of tax liabilities owing by the debtor or the estate prior to or during a bankruptcy case whether or not the governmental unit to which such taxes are owed files a proof of claim. Except as provided in sections 106(a) and (b), subsection (c) is not limited to those issues, but permits the bankruptcy court to bind governmental units on other matters as well. For example, section 106(c) permits a trustee or debtor in possession to assert avoiding powers under title 11 against a governmental unit; contrary

language in the House report to H.R. 8200 is thereby overruled.[15]

Further clarifying language appears in the Congressional Record:

Section 547(b)(2) of the House amendment adopts a provision contained in the House bill and rejects an alternative contained in the Senate amendment relating to the evidence of a preferential transfer that is payment of a tax claim owing to a governmental unit. As provided, section 106(c) of the House amendment overrides contrary language in the House report with the result that the government is subject to avoidance of preferential transfers.[16]

Though Congressman Edwards stated that "section 106(c) permits a trustee or debtor in possession to assert avoiding powers under title 11 against a governmental unit," the further clarifying statement makes it clear that the "avoiding powers" referred to by Edwards only related to "a preferential transfer that is payment of a tax claim owing to a governmental unit." The addition of Section 106(c), therefore, was apparently intended to expand the waiver of sovereign immunity only to the extent necessary to include preference actions against taxing authorities. But the actual language of Section 106(c) as enacted is much broader and subjects state governmental units to the jurisdiction of federal bankruptcy courts on any issue arising under any Title 11 provision containing the terms "creditor," "entity," or "governmental unit."[17]

---

**15.** 124 Cong.Rec. H 11091; S 17407.

**16.** 124 Cong.Rec. H 11097; S 17414.

**17.** A discussion of Section 106(c) appears in Kennedy, "Automatic Stays Under the New Bankruptcy Law," 12 U.MICH.J.L.REF. 3, 29: "Under the version of section 106 as it originally passed both houses of Congress, the government could have argued with considerable success that a waiver of sovereign immunity by any governmental unit would depend on the filing of a proof of claim or interest by the unit involved. The section thus could have been construed as overruling the many cases that have held the government suable under section 2a(2A) and (12) of the Bankruptcy Act when the debtor seeks a determination of dischargeability

of tax or other governmental claim. *See, e.g., Gwilliam v. United States,* 519 F.2d 407 (9th Cir.1975); *In re Durensky,* 377 F.Supp. 798 (N.D. Tex.1974), *appeal dismissed,* 519 F.2d 1024 (5th Cir.1975). The courts have rejected as immaterial to their jurisdiction under the Bankruptcy Act that the governmental unit has filed no proof of claim. Section 106(c) as finally enacted provides that notwithstanding any assertion of sovereign immunity, any provision of Title 11 referring to 'creditor,' 'entity,' or 'governmental unit' applies to governmental units, and 'a determination by the court of an issue arising under such provision binds governmental units.' According to the legislative history, the purpose is 'to comply with the requirement in case law that an express waiver of sovereign immunity is re-

788

## DECISION

■ As can be seen from these comments regarding the legislative history and development of Section 106(c), Congress intended a broad, but not total, subjugation of the states to the determinations of bankruptcy courts under the Code.

It is the conclusion of this court that the issue of whether or not a school district, found to be a governmental unit within the meaning of Section 106(c) of the Code,[18] is subject to the jurisdiction of a federal bankruptcy court depends upon whether those sections of the Code, under which the school district is being proceeded against, contain the terms "creditor," "entity," or "governmental unit."

In this case the school district is being proceeded against by a bankruptcy trustee under the provisions of Section 548(a)(2) which provides that:

(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor

. . . . .

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(ii) was engaged in business, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or

(iii) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

Section 548(a)(2) does not contain the terms "creditor," "entity," or "governmental unit." Therefore, no determination by this court of issues arising under Section 548(a)(2) can bind the school district.[19] Moreover, since the application of Section 548(a)(2) is a necessary predicate to the application of Section 550, it follows that Section 550 can have no application in this case, either.

In this case, the trustee argues, to the contrary, that the Code allows him to recover money from a Utah state school district under 11 U.S.C. §§ 548(a)(2) and 550. The trustee bases his position upon a misinterpretation of the following language

quired in order to be effective.' Although more guardedly drafted, section 106 comes close to adopting the broad provision for general applicability of the bankruptcy laws to the federal or state government that had been recommended by the Commission on the Bankruptcy Laws. The scope of a waiver of sovereign immunity is essentially a matter of determining congressional intent."

In a footnote, Professor Kennedy says that: "Section 106(c) appears to make Title 11 and determinations by the bankruptcy court thereunder fully applicable to every governmental unit insofar as it may be acting or proceeding against the debtor or its property. Subsection (c) is subject to subsections (a) and (b) of section 106, but it is not apparent how these subsections limit the scope of subsection (c). Subsection (a) is a declaration of waiver of sovereign immunity with respect to any claim against a governmental unit that arises out of the same transaction or occurrence as that underlying a governmental unit's claim. Subsection (b) of section 106 requires an offset against an allowed claim or interest of a governmental unit

of any claim belonging to the estate against the governmental unit. The allowability of neither the counterclaim nor the offset depends on the filing of a proof of claim by the governmental unit, as had been required under the earlier version of section 106(a), (b) passed by the House and Senate." *Id.* at 29–30 n. 120.

18. *See* text at note 5, *supra.*

19. Although Section 548(a)(1) uses the term "entity," the trustee is not proceeding under that section. Even if the trustee were proceeding under Section 548(a)(1), however, it is doubtful whether the use of the term "entity" in Section 548(a)(1) is a use of that term meant by Section 106(c) to be a waiver of state sovereign immunity. The term "entity" in Section 548(a)(1) is used to describe creditors the debtor intended to hinder, delay, or defraud by making a transfer or incurring an obligation. It is not a reference to the defendant in an action under Section 548(a)(2). The school district in this case is not an entity to which the debtor was or became indebted.

found in the floor statements of Congressman Edwards and Senator Deconcini:

> [S]ection 106(c) permits a trustee or debtor in possession to assert avoiding powers under title 11 against a governmental unit...[20]

The trustee concludes from this statement that it was Congress' intent to subject states to the jurisdiction of the federal bankruptcy courts in any proceeding where the trustee exercised any "avoiding powers," regardless whether or not the avoiding power provision of the Code contained the term "creditor," "entity," or "governmental unit."

But the broad language of the floor statements, quoted above, can be construed as supportive of trustee's argument only if it is viewed in the abstract and applied out of context to enlarge the intended scope of the statute. The trustee does not consider the effect of the qualifying language immediately following the quotation he cited:

> [S]ection 106(c) permits a trustee or debtor in possession to assert avoiding powers under title 11 against a governmental unit; *contrary language in the House Report to H.R. 8200 is thereby overruled.*[21]

The overruled contrary language in the House Report to H.R. 8200 was as follows:

> The trustee would be able to recover [a preferential transfer] only if the taxing authority did not have sovereign immunity under proposed 11 U.S.C. 106.[22]

When Mssrs. Edwards and Deconcini said that this "contrary language" was "overruled," they were speaking only in the context of the recovery of *preferential* transfers under Section 547(b), which contains the terms "creditor," "entity," or "governmental unit." 11 U.S.C. § 106(c). They meant only that a trustee acting pursuant to this provision of the 1978 Code, would be able to recover preferential transfers not only from those governmental units that did not have sovereign immunity

or that had waived it (as had been contemplated under H.R. 8200), but from *any governmental unit*, regardless of its claim to sovereign immunity. The avoidance powers of a trustee against a governmental unit were to be limited to preferential transfers in Section 547(b) proceedings only; they were not meant to extend to the recovery of fraudulent conveyances under Section 548(a)(2) unless the governmental unit waived or otherwise was deprived of its sovereign immunity.

In further asserting his argument, the trustee relies upon a number of opinions construing Section 106(c) in lawsuits brought *under Section 547(b)*, the preference section. But, for the reasons explained below, these opinions are not authority for the trustee's proposition that a governmental unit can be bound in this court in a proceeding *under Section 548(a)(2)*. The trustee cites *Gardner v. Commonwealth*, 685 F.2d 106 (3d Cir. 1982), *cert. denied*, 459 U.S. 1092, 103 S.Ct. 580, 74 L.Ed.2d 939. In *Gardner*, the court concluded that Section 106(c) waived the sovereign immunity of the Commonwealth of Pennsylvania in a proceeding brought under Section 522(f). The Commonwealth had argued that because Section 522(f) does not contain the words "creditor," "entity," or "governmental unit," it could not have been intended to apply to the states. But the *Gardner* court, calling this an ingenious but unpersuasive argument, brushed it aside in reliance upon S.Rep. No. 95–989, 95th Cong., 2d Sess. 76 (1978) and H.R.Rep. No. 95–595, 95th Cong., 1st Sess., 362 (1977). However, the cited portions of these reports have nothing in them to support the *Gardner* court's holding. Moreover, the *Gardner* court's reliance on *In re Neavear*, 674 F.2d 1201, 1204 (7th Cir.1982), was misplaced because *Neavear* dealt only with the waiver of the sovereign immunity of the *federal* not a *state* government. Thus, *Gardner* presents no persuasive reasons

---

**20.** *See* text at note 15, *supra.*

**21.** *See* text at note 15, *supra,* [emphasis added].

**22.** H.R.Rep. No. 95–595, at 373 (1977), U.S.Code Cong. & Admin.News 1978, p. 6329; *see also* text at note 14, *supra.*

for ignoring the plain language of Section 106(c).

## CONCLUSIONS

Section 106(c), by its clear terms, binds the school district only to this court's determination of issues arising under a provision of Title 11 that contains the terms "creditor," "entity," or "governmental unit." Section 547(b), because it contains the term "creditor," does apply to any governmental unit regardless of its claim to sovereign immunity, as provided by Section 106(c); Section 548(a)(2) and 550, because they do not contain the words "creditor," "entity," or "governmental unit," cannot be so applied unless that unit has waived its sovereign immunity or is, for other reasons, found to be bereft of it. Although the trustee wishes the court to hold that a state subdivision, a school district, can be bound by a Title 11 provision that does not contain any of these terms, this the court cannot do so without presuming upon the domain of the Congress.

For these reasons, this court finds that it has no jurisdiction over a governmental unit on a trustee's complaint brought pursuant to Sections 548(a)(2) and 550 of the Code. Accordingly, the school district's motion to dismiss is granted, and the trustee's motion for summary judgment is denied. Nothing in this decision addresses the merits of the trustee's cause of action if brought in a court of competent jurisdiction.