**In re WILLINGTON CONVALESCENT HOME, INC., Debtor.**

**STATE OF CONNECTICUT, DEPARTMENT OF INCOME MAINTENANCE and State of Connecticut, Department of Health Services, Defendant/Appellants,**

v.

**Martin W. HOFFMAN, Trustee, Plaintiff/Appellee.**

**Civ. No. H–84–636 (PCD).**

United States District Court, D. Connecticut.

May 8, 1987.

---

Kenneth A. Graham, Arnold I. Menchel, Asst. Attys. Gen., Hartford, Conn., for Conn. Dept. of Income Maintenance.

Stanley K. Peck, Asst. Atty. Gen., Hartford, Conn., for Conn. Dept. of Health Services.

J. Christopher Kohn, Tracy J. Whitaker, Attys. Civil Div., Dept. of Justice, Washington, D.C., for U.S.

Martin W. Hoffman, Hartford, Conn., trustee.

## MEMORANDUM OF DECISION

DORSEY, District Judge.

This is an appeal from a decision by the United States Bankruptcy Court (Krechevsky, J.) denying the State of Connecticut's motion to dismiss a claim against it brought by the trustee of a debtor in a converted Chapter 7 bankruptcy proceeding. *See Hoffman v. State of Connecticut (In re Willington Convalescent Home, Inc.),* 39 B.R. 781 (Bankr.D.Conn.1984). The State had alleged that no money was owed to the debtor and that it was immune from suit in federal court by virtue of the bankruptcy laws and the eleventh amendment.[1]

At the outset, appellee trustee raises a threshold objection—in the form of a motion to dismiss [2]—as to the propriety of this

---

1. The eleventh amendment declares:
   The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State or by Citizens or Subjects of any Foreign State.

2. Appellants claim that the appropriate vehicle for appellee's objection is a statement in the

appeal. Appellee argues that the denial of the original motion to dismiss by the bankruptcy court was interlocutory in nature and not a final order. Plaintiff/Appellee's Memorandum in Support of the Motion to Dismiss ("Appellee's Memorandum") at 2. *See Collier on Bankruptcy* § 3.03(3) (15th ed. 1984) ("The denial of a motion to dismiss, even when the motion is based on jurisdictional ground, does not ... terminate the action and the order is interlocutory."). Because the ruling was interlocutory, appellee contends that it is appealable only by leave of the district court, as prescribed by Bankruptcy Rule 8001(b)[3] and only after the filing of a motion for leave to appeal with the bankruptcy court clerk, as required by Bankruptcy Rule 8003(a).[4] Appellants concede they did not file a motion for leave to appeal, but assert no need to do so on the ground that the ruling of the bankruptcy court was final, not interlocutory, and governed, therefore, by Bankruptcy Rule 8001(a),[5] which requires merely the filing of a notice of appeal.

▆ Assuming, arguendo, that the ruling of the bankruptcy court was interlocutory, not final, it may still be appealable to this court even in the absence of a motion for leave to appeal. Rule 8003(c) provides:

*Appeal Improperly Taken Regarded as a Motion for Leave to Appeal.* If a required motion for leave to appeal is not filed, but a notice of appeal is timely filed, the district court ... may grant leave to appeal or direct that a motion for leave to appeal be filed. The district court ... may also deny leave to appeal but in so doing shall consider the notice of appeal as a motion for leave to appeal. ...

Thus, the Bankruptcy Rules do not focus on the technical distinctions between a motion for leave to appeal and a notice of appeal; indeed, they entrust to the district court discretion to determine whether the questions resolved by the bankruptcy court are or are not appealable.[6]

▆ Although appellee takes the position that the issues sought to be appealed are not of such a character that they cannot await review following final adjudication on the merits by the bankruptcy court, Appellee's Memorandum at 4–6, the legal and constitutional questions raised by the State of Connecticut implicate the doctrine of sovereign immunity and challenge the propriety of any and all proceedings against the State in the bankruptcy court. Such matters are well to be resolved prior to subjecting the parties to extensive litigation on the merits lest all efforts be found, on appeal, to have been in vain. The delicate balance of our federal system should make federal courts reluctant to require states to defend lawsuits to their conclusion which, arguably, Congress or the Constitution has placed beyond the federal judi-

appeal brief attacking the basis for jurisdiction and not a separate motion to dismiss. Appellants' Memorandum in Opposition to Appellee's *Motion to Dismiss* ("Appellant's Memorandum") at 9. For the reason set forth in note 7, *infra,* this issue will not be addressed.

3. Rule 8001(b) provides: "An appeal from an interlocutory judgment, order or decree of a bankruptcy judge ... shall be taken by filing a notice of appeal ... accompanied by a motion for leave to appeal prepared in accordance with Rule 8003...."

4. Rule 8003(a) provides:
A motion for leave to appeal ... shall contain:
(1) a statement of the facts necessary to an understanding of the questions to be presented by the appeal;
(2) a statement of those questions and of the relief sought;
(3) a statement of the reasons why an appeal should be granted; and

(4) a copy of the judgment, order, or decree complained of and of any opinion or memorandum relating thereto.
Within 10 days after service of the motion an adverse party may file with the clerk of the bankruptcy court an answer in opposition.

5. Rule 8001(a) provides: "An appeal from a final judgment, order, or decree of a bankruptcy judge to a district court ... shall be taken by filing a notice of appeal with the clerk of the bankruptcy court...."

6. As explained in the Advisory Notes to Rule 8003:
*Subdivision (c)* provides that if a party mistakenly believes the order appealed from is final and files only a notice of appeal, the appeal is not automatically dismissed. The district court ... has the options to direct that a motion be filed, to decide exclusively on the papers already filed to grant leave to appeal, or to deny leave to appeal.

cial power. Accordingly, appellee's motion to dismiss this appeal is denied.[7]

*Background*

Willington Convalescent Home, Inc. ("Willington") formerly operated a nursing home facility which participated in the Connecticut Medicaid Program. Under the program, Willington agreed to provide nursing care services to indigent patients eligible under Title XIX at a specific per diem rate of compensation. The State determined the per diem rate from annual cost reports submitted by Willington.

Initially, the State accepts at face value the cost data submitted by nursing homes such as Willington, but regulations provide for subsequent field audits to verify that the costs claimed are legitimate. If costs are found to have been improperly claimed, the State may adjust the per diem rate retroactive to the applicable rate year and recoup the amount of medicaid overpayment from whatever monthly payments may be due and owing to the facility for current patient care.[8] If the nursing home disputes the findings made in the field audit, it may seek an administrative hearing within the Department of Income Maintenance, Conn.Gen.Stat. § 17–311, and then seek judicial review by appeal to the Connecticut Superior Court, Conn.Gen.Stat. § 4–183.

Willington submitted cost reports for the years 1976–1978 which were relied on by the State in setting the per diem Medicaid rates for those years. However, a field audit completed on December 3, 1980, discovered that real property costs claimed as $294,007 were actually only allowable in the amount of $22,500. As a result, Willington had received substantial Medicaid overpayments for five rate-years. On February 24, 1982, the State retroactively revised Willington's per diem rates for 1976 and 1980; on August 6, 1982, the rates for 1977–1979 were also adjusted downward. Willington timely requested review of the latter rate decision, but then moved to postpone the administrative hearing indefinitely. Willington did not appeal the rate decision of February 24, 1982.

On June 2, 1982, Willington filed a Chapter 11 petition in bankruptcy. Willington did not submit its provider agreement to the bankruptcy court for assumption or rejection. Since Willington continued as a provider participant in the Medicaid Program, the Department of Income Maintenance sought to and did recoup a modest amount of the past Medicaid overpayment from the monthly payments due Willington for on-going patient care. Willington shut down permanently in April 1983 still owing the State $121,408. At no time did Connecticut file a proof of claim against the bankrupt estate.

On July 27, 1983, the bankruptcy court converted the case to one under Chapter 7 and appointed a trustee. The trustee filed a complaint against Connecticut seeking payment of $64,010.24 for services provid-

---

7. The decision to hear the appeal renders it unnecessary to address whether the order of the bankruptcy court was interlocutory or final, or whether appellee's motion to dismiss was the appropriate vehicle to raise these procedural issues.

8. Section 17–311–53 of the Regulations of Connecticut State Agencies provides, in part:
(b) Whenever the Commissioner of Income Maintenance renders a rate decision, whether based upon a field audit or otherwise, which decision results in the facility being indebted to the Department of Income Maintenance for past medicaid overpayments, the Department shall recoup said medicaid overpayments as soon as possible from the Department's monthly medicaid payments to the facility....
(c) In a recoupment situation, the Department of Income Maintenance shall determine a recoupment schedule of amounts to be recouped from the facility's monthly medicaid payments after consideration of the following factors:
(1) the amount of the indebtedness;
(2) the objective of completion of total recoupment of past medicaid overpayments as soon as possible;
(3) the cash flow of the facility; and
(4) any other factors brought to the attention of the department by the facility relative to the provider's ability to function after recoupment.
(d) Whenever a facility has received past medicaid overpayments, the Department may recoup the amount of such medicaid overpayments from the monthly payments to the facility regardless of any intervening change in ownership.

ed to Medicaid patients by Willington during March 1983. The State admitted the rendering of the services, but asserted both its right to recoup the prepetition Medicaid overpayments and its insulation from suit on grounds of sovereign immunity and the eleventh amendment. Accordingly, the State moved to dismiss for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(1) and 12(b)(6), as made applicable to bankruptcy proceedings by Bankruptcy Rule 7012(b). In denying that motion, the bankruptcy court held that: (1) Congress had intended to abrogate the sovereign immunity of a state where, as here, the state owed a matured debt to the bankrupt estate; (2) Congress intended to abrogate the eleventh amendment immunity of a state to suit in federal court in the circumstances at bar; (3) Congress has authority under the Bankruptcy Clause of the Constitution[9] to abrogate a state's eleventh amendment and sovereign immunity; and (4) Connecticut owes the estate the payment due for March 1983 because the State may not set off a postpetition obligation to the debtor against a prepetition claim against the debtor.

As the State had challenged the constitutionality of a provision of the Bankruptcy Code (as construed by the bankruptcy court), this appeal was deferred until the Attorney General of the United States was apprised of the challenge and permitted to argue the constitutional question. *See* 28 U.S.C. § 2403(b).[10] The United States has intervened and filed a brief on the constitutional issues.

*Discussion*

Resolution of this appeal requires an analysis of the following provision of the Bankruptcy Code:

**9.** "The Congress shall have Power ... to establish ... uniform Laws on the subject of Bankruptcies throughout the United States." U.S. Const. Art. I, § 8.

**10.** The following question was certified to the Attorney General:

whether § 106(c) of the Bankruptcy Code, alone or in conjunction with other Code sections, effects or purports to effect a waiver or abrogation of a state's eleventh amendment immunity from suit for retrospective money damages and, if so, whether such waiver or

11 U.S.C. § 106—*Waiver of sovereign immunity*

(a) A governmental unit is deemed to have waived sovereign immunity with respect to any claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which such governmental unit's claim arose.

(b) There shall be offset against an allowed claim or interest of a governmental unit any claim against such governmental unit that is property of the estate.

(c) Except as provided in subsections (a) and (b) of this section and notwithstanding any assertion of sovereign immunity—

(1) a provision of this title that contains "creditor", "entity", or "governmental unit" applies to governmental units; and

(2) a determination by the court of an issue arising under such a provision binds governmental units.

After noting that the term "governmental unit" is specifically defined in the Code to include a state government,[11] the bankruptcy court found the following provision—addressed to an "entity" (and, hence, by virtue of § 106(c), to a state)—applicable to the debt owed by Connecticut for services rendered by Willington in March 1983:

11 U.S.C. § 542(b): [A]n entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor.

"Thus," the court concluded, "Congress has expressly provided that a State is

abrogation is within congressional power under the Bankruptcy Clause.
Certification Order of June 18, 1985 at 2.

**11.** 11 U.S.C. § 101(21) provides:

"governmental unit" means United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States, a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government.

bound by a court judgment ordering it to make payment of a matured debt and a defense of sovereign immunity against a suit brought by a trustee is unavailing." *Willington*, 39 B.R. at 786. Therefore, § 106(c) was held to waive sovereign immunity of governmental units as to suits for retroactive monetary damages even in instances where the governmental unit had not filed a proof of claim against the bankrupt estate, as described in subsections 106(a) and (b).

There are two problems with the preceding analysis. The first is that § 542 applies to turnover petitions and not, as here, to adversary proceedings for money damages pursuant to a contract claim. The basis of jurisdiction in this action, as the bankruptcy court correctly noted, is the authority of bankruptcy courts to adjudicate claims "arising in or related to cases under title 11." 28 U.S.C. § 1471(b).[12] That section of the Code, however, does not contain the words "creditor," "entity," or "governmental unit," i.e., the terms required to trigger the waiver of sovereign immunity provided for in § 106(c).

The second and principal difficulty with the bankruptcy court's analysis is that it is premised on a construction of § 106(c) which cannot readily be harmonized with subsections (a) and (b). Subsection (a) exposes governmental units to suits without limit where a compulsory counterclaim is filed after the sovereign files its own proof of claim in a bankruptcy proceeding. Subsection (b) exposes sovereigns to permissive counterclaims (for offset purposes) but, again, only *after* the sovereign files its own proof of claim. The express waiver of sovereign immunity in the carefully limited circumstances provided for in subsections (a) and (b) would seem to preclude reading subsection (c) as a completely independent wide-open waiver of sovereign immunity which would permit suits against the state for retroactive money damages irrespective of whether the state had first brought suit against the estate. Indeed, subsection (c) begins by specifically acknowledging that its reach as a waiver of sovereign immunity is limited by the two subsections which precede it. The opening words of (c)—"Except as provided in subsections (a) and (b) of this section"—seem calculated to prevent subsection (c) from exposing governments to liability for money judgments or set-offs beyond what had been accomplished in the excepted subsections.

■■■■ Reading subsection (c) as a general waiver of sovereign immunity would appear to compromise at least three important and related principles of statutory construction: (1) a section of a statute should not be read in isolation from other provisions of the statute, *Richards v. United States*, 369 U.S. 1, 11, 82 S.Ct. 585, 591, 7 L.Ed.2d 492 (1962); (2) a statute should not be construed in a way which renders part of it mere surplusage, *see Jarecki v. G.D. Searle & Co.*, 367 U.S. 303, 307–308, 81 S.Ct. 1579, 1582–83 6 L.Ed.2d 859 (1961)

---

12. The full text of 28 U.S.C. § 1471(b) reads as follows:

> Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11.

"Although the Act initially vests this jurisdiction in district courts," the Supreme Court observed in *Northern Pipeline v. Marathon Pipe Line Co.*, 458 U.S. 50, 54 n. 3, 102 S.Ct. 2858, 2862 n. 3, 73 L.Ed.2d 598 (1982), "it subsequently provides that '[t]he bankruptcy court for the district in which a case under title 11 is commenced shall exercise *all* of the jurisdiction conferred by this section on the district courts,' § 1471(c).... (Emphasis added). Thus the ultimate repository of the Act's broad jurisdictional grant is the bankruptcy courts." *Id.* (Citation omitted).

In *Marathon Pipe Line* the Court struck down § 1471(b) because it granted to Article I courts power reserved by the Constitution to Article III courts. An emergency resolution adopted by the United States District Judges for the District of Connecticut temporarily restored the bankruptcy's court "arising in or related to" jurisdiction, pursuant to review and control by the district court, until Congress enacted the 1984 amendments to the Bankruptcy Code codified at 28 U.S.C. § 1334.

It should be pointed out that the underlying theory of *Marathon Pipe Line* is fundamentally in tension with Judge Krechevsky's declaration in *Willington* that "[i]t is clear that [because of the eleventh amendment and sovereign immunity claims] the debtor could not have brought this suit in a federal court in a nonbankruptcy context." 39 B.R. at 784.

(preferring a "construction which gives effect to all of [a statute's] provisions" to a reading which renders one part "a mere redundancy"); [13] and (3) waivers of sovereign immunity must be strictly construed in favor of the sovereign, *McMahon v. United States*, 342 U.S. 25, 27, 72 S.Ct. 17, 19, 96 L.Ed. 26 (1951).

Particularly where the sovereign immunity of a state is at stake, courts must tread warily. In *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 105 S.Ct. 3142, 3148, 87 L.Ed.2d 171 (1985), the Supreme Court enjoined courts when construing federal statutes to be "certain" that Congress intended therein to provide for suits against unconsenting states. There must be "an unequivocal expression of congressional intent," *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 99, 104 S.Ct. 900, 907, 79 L.Ed.2d 67 (1984), "in the statute itself," *Atascadero*, 105 S.Ct. at 3148, before concluding that Congress has waived the sovereign immunity of states. After reviewing the Supreme Court's recent pronouncements in this area, the Court of Appeals for the Seventh Circuit concluded it must apply "a somewhat higher standard of proof than is usual in cases of statutory interpretation," one re-

quiring the exercise of "heightened scrutiny" by federal courts. *McVey Trucking, Inc.*, 812 F.2d at 324. "This proof requirement is extremely rigorous when the effect of the purported federal liability upon the state treasury is potentially severe." *Willington*, 39 B.R. at 789, citing *Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979), and *County of Monroe v. State of Florida*, 678 F.2d 1124, 1131 (2d Cir.), *cert. denied*, 459 U.S. 1104, 103 S.Ct. 726, 74 L.Ed.2d 951 (1983).

■ In light of the explicit language in subsection (c) excepting the provisions of subsections (a) and (b), it is not "certain" that Congress intended in subsection (c) to expose state governments to suits for money damages in federal courts in the precise circumstances of this case. However, the bankruptcy court quite properly [14] looked beyond the face of the statute and concluded from its legislative history that, even if its reading of subsection (c) rendered subsections (a) and (b) mere surplusage, it was, nevertheless, faithful to what Congress had intended.[15]

*Legislative History*

■ An original draft of the Bankruptcy Code as proposed by the Commission on

---

**13.** The bankruptcy court did attempt to formulate an interpretation of subsection (c) which would give meaning to subsections (a) and (b): [Section] 106(c) by its terms is to be read only with Code provisions addressed to "creditor[s]", "enti[ties]" or "governmental unit[s]." Not all Code provisions are so addressed. Sections 545 (statutory liens) and 549 (postpetition transfers) are outside the scope of § 106(c)(1). On the other hand, § 106(a) and (b) apply to all Code provisions. Thus, there is room for the operation of § 106(a) and (b) under this construction of § 106(c). *Willington*, 39 B.R. at 786. The court conceded, however, that its construction of § 106 might possibly be "too technical and simplistic an answer to Connecticut's 'surplusage' argument." *Id.* In *McVey Trucking, Inc. v. Secretary of the State of Illinois (In re McVey Trucking, Inc.)*, 812 F.2d 311, 322, 327 (7th Cir.1987), the Court of Appeals found that subsections (a) and (b) describe circumstances in which a state may *voluntarily* waive sovereign immunity whereas subsection (c) constitutes a *forced* waiver of sovereign immunity. The problem with that construction of § 106 is that it does not adequately address the "surplusage" argument: why would Congress have provided for "voluntary" waiver of sovereign immunity in certain limited cir-

cumstances if, in the very next subsection, it had meant to "force" a waiver of sovereign immunity across the board?

**14.** In *McVey*, Illinois had argued that it was improper under *Atascadero* for courts to go beyond the face of the statute to determine whether Congress had provided a cause of action against the state. The Court of Appeals rejected that contention and consulted legislative history "to resolve any lingering uncertainty." 812 F.2d at 324. Although here the conclusion about the meaning of subsection (c) differs from that of the Seventh Circuit and the bankruptcy court, reference to legislative history is often required, and proper, to determine what the words of a statute mean.

**15.**
   [E]ven if the above construction of § 106(c) were to render § 106(a) and (b) surplusage, that result would not be an insuperable obstacle to that construction. [T]he Supreme Court has noted in another context, "even the most basic general principles of statutory construction must yield to clear contrary evidence of legislative intent."
39 B.R. at 786, citing *National R.R. Passenger Corp. v. Passengers Ass'n*, 414 U.S. 453, 458, 94 S.Ct. 690, 693, 38 L.Ed.2d 646 (1974).

the Bankruptcy Laws of the United States would have made *all* Code provisions applicable to governmental units. That recommendation was rejected.[16] Instead, the original House and Senate versions of the Code were far narrower in scope and included only what now appears essentially as § 106(a) and (b). The Report accompanying the measure read, in relevant part:

> First, the filing of a proof of claim against the estate by a governmental unit is a waiver by that governmental unit of sovereign immunity with respect to compulsory counterclaims, as defined in the Federal Rules of Civil Procedure, that is, counterclaims arising out of the same transaction or occurrence. The governmental unit cannot receive a distribution from the estate without subjecting itself to liability it has to the estate within the confines of a compulsory counterclaim rule. Any other result would be one-sided. The counterclaim by the estate against the governmental unit is without limit.
>
> Second, the estate may offset against the allowed claim of a governmental unit up to the amount of the governmental unit's claim, any claim that the debtor and thus the estate, has against the governmental unit, without regard to whether the estate's claim arose out of the same transaction or occurrence as the government's claim. Under this provision, the setoff permitted is only to the extent of the governmental unit's claim. No affirmative recovery is permitted. Subsection (a) governs affirmative recovery.
>
> Though this section creates a partial waiver of immunity when the governmental unit files a proof of claim, it does not waive immunity if the debtor or trustee, and not the governmental unit, files proof of a governmental unit's claim....

S.Rep. No. 95–989, 95th Cong., 2d sess., at 29–30, U.S.Code Cong. & Admin.News 1978, pp. 5787, 5815–5816. The Senate Report also noted, "Though Congress has the power to waive sovereign immunity for the Federal government completely in bankruptcy cases, ... Congress does not ... have the power to waive sovereign immunity with respect to claims of a bankrupt estate against a State...." *Id.* That comment is of particular significance—not because it correctly assesses the extent of Congress' power [17]—but because it indicates what the authors of the Senate Re-

---

**16.** A tax consultant to the Commission testifying before the House and Senate Judiciary Committees expressed as follows his concerns about the effect of the Commission's proposal on state sovereign immunity:

> [The proposal would] have the effect of permitting the bankrupt estate to sue the United States or a State in Bankruptcy Court to recover overpayment of taxes. Today, it is necessary for the estate to go through the more time-consuming process of suing the United States in the District Court or the Court of Claims, and suing the State in whatever forum it provides for that purpose. Congress long ago submitted the Federal Government's affirmative claims for unpaid taxes to the jurisdiction of the Bankruptcy Court in order to speed the closing of estates, and it should not hesitate to do the same concerning claims for overpayments that the Government happens to have collected before bankruptcy. But I raise for your consideration the question whether Congress, even if it has the power, should undertake to subject the States to suits for tax refunds (or other *claims*) in courts not of their own choosing. It is true that Congress has long exercised its bankruptcy power to regulate the manner of determining state claims for *unpaid* taxes, to fix their liens and priority, to bar those not timely presented, and to discharge their tax debtors. But the State in those situations is the moving party, appearing in the Bankruptcy Court in order to share in a fund of which the federal power has validly taken possession, or pursuing a debtor who had been freed of his debts pursuant to federal constitutional power. In the case of claims *against* the State, I suggest that, even if the constitutional power were clear—which it is not—a proper regard for the independence of State governments may outweigh the desirability of providing in the Bankruptcy Courts a possibly more speedy procedure than the States themselves provide for such determinations.

*Hearings on H.Rep. 31 and H.Rep. 32 before the Subcommittee on Civil and Constitutional Rights of the House Committee on the Judiciary,* 94th Cong., 2d sess., § 27, pt. 4 at 2034–35 (1976) (statement of William T. Plumb, Jr.) (emphasis in original).

**17.** Although the Supreme Court has held that Congress may, pursuant to § 5 of the fourteenth amendment, abrogate a state's immunity from suit in federal court, *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976), it has left open the question whether Congress

**1010**

port believed to be true about the extent of Congress' power.

Thereafter, a Conference Committee made minor revisions in subsections (a) and (b) and added subsection (c) for the first time. The Conference Committee offered the following explanation for the addition of § 106(c):

> Section 106(c) relating to sovereign immunity is new. The provision indicates that the use of the term "creditor", "entity", or governmental unit in Title 11 applies to governmental units notwithstanding any assertion of sovereign immunity and that an order of the court binds governmental units. The provision is included to comply with the requirement in case law that an express waiver of sovereign immunity is required in order to be effective. Section 106(c) codifies *In re Gwilliam,* 519 F.2d 407 (9th Cir.1975), and *In re Dolard,* 519 F.2d 282 (9th Cir.1975), permitting the bankruptcy court to determine the amount and dischargeability of tax liabilities owing by the debtor or the estate prior to or during a bankruptcy case whether or not the governmental unit to which such taxes are owed files a proof of claim. *Except as provided in sections 106(a) and (b),* subsection (c) is not limited to those issues, but permits the bankruptcy court to bind governmental units on other matters as well. For example, section 106(c) permits a trustee or debtor in possession to assert avoiding powers under Title 11 against a governmental unit; contrary language in the House report ... is thereby overruled.

124 Cong.Rec. H 11091 (emphasis added); *see also* 124 Cong.Rec. S 17407.

The bankruptcy court, when quoting the above language, chose to underscore—not "Except as provided in sections 106(a) and (b)"—but the last full sentence. The court concluded therefrom that "the final version of § 106 abandons the initial, limited approach to the 'waiver' issue and more nearly approximates the broad approach of the Commission draft." 39 B.R. at 788.[18]

---

may do so pursuant to one of the enumerated powers in article I, § 8 of the Constitution. In *McVey,* the court of appeals held, as did the bankruptcy court in the instant case, that Congress was authorized by the Bankruptcy Clause to abrogate the eleventh amendment and sovereign immunity of a state. *See* 812 F.2d at 323 ("Congress may abrogate state immunity to suit pursuant to any of its plenary powers.").

**18.** For support, the court referred to 2 *Collier on Bankruptcy* § 106.04 (15th ed. 1984): "Section 106(c) is as broadly applicable as would be expected from the language employed, and it permits the bankruptcy court to bind governmental units on matters other than tax claims." However, the author of the treatise also observed:

> If a governmental unit desires to assert its rights against a debtor in bankruptcy, it must assume its place with other creditors and suffer the loss of whatever special protection it might otherwise enjoy by reason of the doctrine of sovereign immunity. Even if the rights of a governmental unit are not asserted, *section 106(c) authorizes the trustee to recover avoidable transfers* from government units. *Id.* (emphasis added). Inasmuch as Connecticut did not "assert its rights" against Willington, and this is not an action to set aside a preferential transfer, the full quotation from Collier would appear to lend as much support to appellants' construction of § 106(c) as to appellee's.

The bankruptcy court also cited with approval a long excerpt from Kennedy, "Automatic Stays Under the New Bankruptcy Law," 12 U.Mich.J.

L.Ref. 3, 29 (1978) which included the following: "Although more guardedly drafted, section 106 comes close to adopting the broad provision for general applicability of the bankruptcy laws to the federal or state government that had been recommended by the Commission on the Bankruptcy Laws." However, the court omitted any reference to a revealing footnote accompanying Professor Kennedy's observation:

> Section 106(c) appears to make Title 11 and determinations by the bankruptcy court thereunder fully applicable to every governmental unit insofar as it may be acting or proceeding against the debtor or its property. *Subsection (c) is subject to subsections (a) and (b) of section 106, but it is not apparent how these subsections limit the scope of subsection (c).* *Id.* at 30 n. 120 (emphasis added). Professor Kennedy's frank admission that he is unable to discern the precise nature of the relationship between subsections (a) and (b), and subsection (c), should lead to caution in relying on his expansive reading of subsection (c). Moreover, Professor Kennedy concludes from the legislative history of subsections (a) and (b) that "[t]he allowability of neither the counterclaim [subsection (a)] nor the offset [subsection (b)] depends on the filing of a proof of claim by the governmental unit," *id.*—a view which has been uniformly rejected by every court which has ruled in cases involving subsections (a) or (b). *See, e.g., Community Hosp. of Rockland County v. United States,* 5 B.R. 11, 12 (Bankr.S.D.N.Y. 1980) ("The legislative history ... makes clear that in order to waive sovereign immunity, it is

Obviously, subsection (c) was intended to and does waive sovereign immunity in *some* instances where the government has not filed a proof of claim. The *Dolard* and *Gwilliam* cases which subsection (c) was designed to codify had held that a specific provision of the prior Bankruptcy Act[19] would be rendered meaningless if a bankruptcy court could not adjudicate the amount and dischargeability of federal income tax liability accruing against the estate. In *In re Remke*, 5 B.R. 299 (Bankr.E.D.Mich.1980), the debtor recovered a preferential transfer from the Internal Revenue Service pursuant to § 547 of the Bankruptcy Code, which deals with transfers to or from a "creditor" and, hence, the federal government. *Accord In re Community Hosp. of Rockland County*, 15 B.R. 785 (Bankr.S.D.N.Y.1981) (trustee in Chapter 7 liquidation proceeding may void tax lien payments made within ninety days of the filing of a bankruptcy petition, even in the absence of the government's filing a proof of claim, when such payments meet the statutory requirements of a preferential

transfer).[20] *See also In re Howell*, 4 B.R. 102 (Bankr.M.D.Tenn.1980); *In re Navear*, 674 F.2d 1201 (7th Cir.1982) (applying § 106(c) to abrogate sovereign immunity of federal agencies in adversary proceedings concerning disability benefits received directly by the debtor). However, the preceding cases involved the federal—not state—government and were preference actions[21] in which the relief sought was either injunctive or declaratory in nature or based upon the in rem jurisdiction of the court.[22] The only case where subsection (c) has been read to abrogate the sovereign immunity of a *state* is *McVey*, which also was a preference action seeking to avoid the transfer of tax payments made by the debtor to the governmental unit.

The only case on all fours with the instant action—*Regal Const. Co. v. State of Maryland (In re Regal Const. Co.)*, 18 B.R. 353 (Bankr.D.Md.1982)—held that subsection (c) did not authorize a suit for money damages by a debtor against a state government. In *Regal*, the debtor sought to recover funds (which the state was withholding

not enough that the Government have a claim against the Debtor; the Government must have taken the affirmative step of filing that claim in the underlying proceeding.").

**19.** Section 2(a)(2A) of the Bankruptcy Act, as amended in 1966, empowered bankruptcy courts to "[h]ear and determine ... any question arising as to the amount or legality of any unpaid tax...."

**20.** It is worth noting that in an earlier stage of *Community Hospital* when the debtor was proceeding on the theory that the I.R.S. tax liens must be subordinated to wage claims owed to employees, the same judge dismissed the complaint and held that because the government had not filed a claim against the estate, it could assert its sovereign immunity with respect to the debtor's subordination claim. *In re Community Hosp. of Rockland County*, 5 B.R. 7 (Bankr.S.D.N.Y.1979), *aff'd*, 5 B.R. 11 (Bankr.S.D.N.Y.1980). The different result in the two *Community Hospital* cases illustrates the importance of a close examination of the specific nature of the claim being asserted against the governmental unit.

**21.** Indeed, one bankruptcy court has stated that § 106(c) was intended to waive sovereign immunity only with regard to preference actions and then only in the case of taxes, *In re T & D Management Co.*, 40 B.R. 781, 787 (Bankr.D. Utah 1984), while acknowledging that the language of the provision is "much broader" than

that. *Id.* Under prior law, the federal government was immune from preference actions even where it filed a proof of claim. *See In re American Boiler Works, Inc.*, 123 F.Supp. 352 (W.D.Pa. 1954), *aff'd*, 220 F.2d 319 (3d Cir.1955). In *Hoffman v. State of Connecticut (In re Zera)*, 72 B.R. 997 (D.Conn.1987), decided the same day as this case, it is held that under § 106(c) sovereigns would not be liable even in preference actions if the result would require funds in the state treasury to flow back to the estate.

**22.** According to the United States Justice Department:

The fair construction of § 106 that gives effect to all of its language is that subsection (c) subjects sovereign units to bankruptcy jurisdiction and authority when the bankruptcy court acts pursuant to a specific grant of authority where relief of an injunctive and declaratory nature can be imposed or when the dispute arises within the bankruptcy court's in rem jurisdiction. For retroactive monetary relief, sovereigns have a choice. If they file a claim in the bankruptcy proceeding, they consent to liability without limit for matters arising out of the same operative facts as the government's proof of claim or to offset liability in the case of permissive counterclaims. If they do not file, sovereign units have their sovereign immunity protection from liability for retroactive monetary damages intact.

Intervening Brief of the United States at 9.

as liquidated damages) for work performed under a contract with a state agency. The court found that merely entering into a contract did not waive the state's sovereign immunity nor was § 106(c) intended by Congress to do so. *See id.* at 357 ("If ... [as plaintiff had argued] § 106(c) constitutes a general waiver of immunity, it would render § 106(a) and § 106(b), which refer to cases in which states file claims, meaningless."). Absent congressional authorization, the eleventh amendment thus prevented the bankruptcy court from assuming jurisdiction:

> Insofar ... as the counts of the complaint request money that [the state] retains as a setoff of amounts allegedly due to it through contract clauses allowing for liquidated damages, the Eleventh Amendment bars suit. In *In re Ramos*, 12 B.R. 250 (Bankr.N.D.Ill.1981), the trustee and debtor attempted to recover funds held by the Illinois Department of Public Aid (IDPA) as a setoff for funds allegedly owed to IDPA by the debtor. In *Ramos*, as in the instant case, plaintiff claimed that 11 U.S.C. § 106 operated as a bar to the state's assertion of sovereign immunity, even though the state had not filed a claim in the bankruptcy case. This court, like the court in *Ramos*, finds that the Eleventh Amendment bars suit for recovery of funds set off by [the state].

*Id.* at 358. *See Swayne v. State of Washington (In re Crum)*, 20 B.R. 160 (Bankr. D.Idaho 1982). *See also In re Newlin*, 29 B.R. 781, 784 (Bankr.E.D.Pa.1983) (finding subsection (c) to be a "limited waiver").

It is found, therefore, that the language and legislative history of §§ 106(a), (b) and (c), as well as the better reasoned case law interpreting those provisions, support appellants' claim that the Bankruptcy Code did not authorize a suit for retrospective money damages against the State of Connecticut. Although subsection (c) was designed to waive sovereign immunity in certain specific circumstances (e.g., preference actions), it must be read in conjunction with the language and legislative history of subsections (a) and (b). When so read, subsec-

tion (c) has a more limited reach than that accorded to it by the bankruptcy court and should not be interpreted as a broad waiver of sovereign immunity which was originally proposed by the Commission but definitely rejected by Congress. Because it is not "certain" that Congress provided a cause of action against a state in the precise circumstances of the case at bar, the bankruptcy court lacked jurisdiction to adjudicate the trustee's contract action against the State of Connecticut for services rendered by Willington in March 1983. Whether, had it chosen to do so, Congress *could* have abrogated a state's eleventh amendment immunity from suit pursuant to its power under the Bankruptcy Clause—a question answered in the affirmative by the bankruptcy court—need not and should not be addressed.[23] *See New York v. Ferber*, 458 U.S. 747, 769 n. 24, 102 S.Ct. 3348, 3361 n. 24, 73 L.Ed.2d 1113 (1982) (if a statute is susceptible of an interpretation which avoids a substantial constitutional issue, that interpretation is compelled). However, should the Court of Appeals for the Second Circuit or the United States Supreme Court conclude that the bankruptcy court did properly assert jurisdiction over the trustee's claim, it is found—for essentially the reasons given in the Brief and Reply Brief of the Appellants—that the terms of Willington's contract with Connecticut entitled the state to recoup past overpayments to Willington by withholding the funds due for services provided in March 1983.

Accordingly, the ruling of the bankruptcy court is reversed and appellants' motion to dismiss is granted.

SO ORDERED.

---

**23.** For a thoughtful treatment of this complex issue, *see McVey*, 812 F.2d at 314–23.