**In re Edward ZERA, Debtor.**

**Martin W. HOFFMAN, Trustee, Plaintiff/Appellee/Cross-Appellant,**

**v.**

**STATE OF CONNECTICUT, DEPARTMENT OF REVENUE SERVICES, Defendant/Appellant/Cross-Appellee.**

**Civ. No. H–84–830 (PCD).**

United States District Court, D. Connecticut.

May 8, 1987.

Jonathon L. Ensign, Asst. Atty. Gen., Hartford, Conn., for Conn. Dept. of Revenue.

Martin W. Hoffman, Hartford, Conn., trustee.

## MEMORANDUM OF DECISION

DORSEY, District Judge.

This is an appeal and cross-appeal, pursuant to Bankruptcy Rule 8001 and 28 U.S.C. § 1334, from a ruling of the United States Bankruptcy Court (Krechevsky, J.) denying defendant's motion to dismiss plaintiff's complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted, Rule 12(b)(1), (6), Fed.R.Civ.P. *Hoffman v. State of Connecticut (In re Zera)*, Bank. No. 2–83–00754 (Bankr.D.Conn. June 8, 1984). The facts summarized by the bankruptcy court and recited in the briefs are not in dispute.

*Background*

Edward Zera did business as Alyear Maintenance Service. Alyear owed the State of Connecticut Department of Revenue ("Revenue") sales and use taxes for the quarters of June 30, 1981, through December 31, 1982; a renewal fee due in July 1983; and penalties and interest. Accordingly, on September 22, 1983, Revenue issued a tax warrant, as authorized by Conn.Gen.Stat. § 12–35 for $1,977, the total of the taxes, fees, penalties and interest owed. An independently employed officer served the warrant upon Pioneer Systems as garnishee. On or about October 6, 1983, Pioneer paid the $1,977, in addition to a $123.62 service fee due the officer—a total of $2,100.62.

Zera also owed the State of Connecticut Department of Labor ("Labor") unemployment compensation taxes in the amount of $1,139.69 (later amended to $1,002.91).

On October 7, 1983, Zera filed a Chapter 7 liquidation petition and a trustee was appointed. On October 28, Labor filed a proof of claim for the unemployment compensation taxes.

On January 5, 1984, the trustee filed a complaint against Revenue seeking the return as a preferential transfer[1] of the $2,100.62 received from Zera's garnishee back in October 1983. Revenue then

---

1. 11 U.S.C. § 547(b) provides:

   Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor—

   (1) to or for the benefit of a creditor;

   (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

   (3) made while the debtor was insolvent;

   (4) made—

   (A) on or within 90 days before the date of the filing of the petition; or

   (B) between 90 days and one year before the date of the filing of the petition, if such creditor, at the time of such transfer—

   (i) was an insider; and

   (ii) had reasonable cause to believe debtor was insolvent at the time of such transfer; and

   (5) that enables such creditor to receive more than such creditor would receive if—

   (A) the case were a case under chapter 7 of this title;

   (B) the transfer had not been made; and

   (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

moved to dismiss, arguing that the eleventh amendment[2] and the doctrine of sovereign immunity barred the trustee's suit as one for retroactive payment of funds from the state treasury. The trustee opposed the motion, claiming that 11 U.S.C. § 106(c)[3] is a constitutional waiver by Congress of a state's eleventh amendment and sovereign immunity and that, in any event, by filing a proof of claim against the estate Labor had waived (as provided in 11 U.S.C. § 106(a)) whatever immunity defenses Revenue might have otherwise asserted.

The bankruptcy court held: (1) with respect to 11 U.S.C. § 106(a), that there had been no waiver of sovereign immunity because the trustee's action against Revenue was not a compulsory counterclaim to Labor's claim against the estate; and (2) with respect to 11 U.S.C. § 106(c), that Congress has the power acting under the Bankruptcy Clause[4] to abrogate the states' eleventh amendment and sovereign immunities, and that by enacting 11 U.S.C. § 106(c) it clearly and unequivocally had done so.

Revenue, though content with the bankruptcy court's analysis of the § 106(a) issues, appeals the court's conclusions with respect to § 106(c). The trustee, though in agreement with the bankruptcy court's views on § 106(c), cross-appeals its treatment of § 106(a).

Inasmuch as part of Revenue's objections to the bankruptcy court's ruling raised a challenge to the constitutionality of § 106(c), this appeal was deferred until the Attorney General of the United States was apprised of the challenge and permitted to argue the constitutional question. *See* 28 U.S.C. § 2403(b). The United States' motion to intervene has been granted and it has filed a brief.

*Discussion*

### Section 106(a)

The State of Connecticut argues that the Departments of Revenue and Labor are two separate "governmental units" within the meaning of 11 U.S.C. § 101(21),[5] so that the filing of Labor's proof of claim waived only that agency's sovereign immunity.[6] The trustee contends that because Labor and Revenue are agencies of the same "governmental unit"—the State of Connecticut—the filing of the proof of claim by Labor effected a waiver of the sovereign immunity which Revenue seeks to assert.[7]

---

2. "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State or by Citizens or Subjects of any Foreign State." U.S. Const. amend XI.

3. Section 106 provides:
*Waiver of Sovereign Immunity—*
(a) A governmental unit is deemed to have waived sovereign immunity with respect to any claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which such governmental unit's claim arose.
(b) There shall be offset against an allowed claim or interest of a governmental unit any claim against such governmental unit that is property of the estate.
(c) Except as provided in subsections (a) and (b) of this section and notwithstanding any assertion of sovereign immunity—
    (1) a provision of this title that contains "creditor", "entity", or "governmental unit" applies to governmental units; and
    (2) a determination by the court of an issue under such a provision binds governmental units.

4. "The Congress shall have Power ... to establish ... uniform Laws on the subject of Bank-

ruptcies throughout the United States." U.S. Const. Art. I, § 8.

5. 11 U.S.C. § 101(21) defines the scope of the term "governmental unit" as used in § 106:
    "Governmental unit" means United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States, a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government.

6. In the context of this specific case, Connecticut would read § 106(a) as follows:
    [The Department of Labor] is deemed to have waived sovereign immunity with respect to any claim against [the Department of Labor] that is property of the estate and that arose out of the same transaction or occurrence out of which [the Department of Labor's] claim arose.
Brief of the Appellant/Cross-Appellee at 17.

7. As stated by the trustee:
    [W]hen a state agency waives sovereign immunity with respect to an action in which the state is the real party in interest, it does so not only for itself, but for the governmental unit on whose behalf it acts. The same principles

The bankruptcy court did not deem it necessary to resolve the nice question posed above, because it found from its reading of the legislative history of § 106(a) that it was intended to apply only with respect to compulsory counterclaims as that term is defined in the Federal Rules of Civil Procedure.[8] The court concluded that the estate's preference claim against Revenue for the sales and use taxes that had been collected could not be viewed as a compulsory counterclaim to Labor's attempt to recover the unemployment compensation taxes.[9] Thus, "even accepting, *arguendo,* the trustee's contention that there is but one governmental unit, Connecticut," *Zera,* slip op. at 9, the filing of Labor's proof of claim was held not to authorize the estate to go after the funds which had been paid to Revenue.

■ The findings and conclusions of the bankruptcy court with respect to § 106(a) are found to be correct and in accordance with the language and legislative history of subsection (a). *See Hoffman v. State of Connecticut (In re Willington Convalescent Home, Inc.),* 72 B.R. 1002, 1008–1010 (D.Conn.1987). Although the trustee contends in this appeal that the debtor's filing of a petition in bankruptcy is the "transaction or occurrence"—within the meaning of § 106(a)—out of which arose both Labor's filing of its proof of claim and the trustee's action to set aside Revenue's preferential transfer, that argument must be rejected as more clever than sound. If the bringing of the bankruptcy proceeding itself were the "transaction or occurrence" linking the two different rights asserted here, then that would mean that *any* claim by the estate could be brought *without limit* against a governmental unit, provided only that the governmental unit had filed proof of *any* claim against the estate. That construction is untenable because it would obliterate the distinction between subsection (a) and subsection (b), that distinction being that only *compulsory* counterclaims may be prosecuted without limit against a governmental unit filing a proof of claim (subsection (a)) whereas *permis-*

that preclude a party from evading sovereign immunity by suing the state through its agencies or officials preclude one state agency from evading the waiver of sovereign immunity incurred by the action of another.... The purpose of § 106(a) would be frustrated if the Department of Labor, acting on behalf of the same sovereign authority, could avoid the waiver of sovereign immunity *that* the statute imposes. When a state invokes the jurisdiction of the bankruptcy court to benefit itself, by filing a proof of claim, it also subjects itself to liability on issues related to that claim.

Brief of the Cross-Appellant at 5.

8. The Report accompanying the measure read, in relevant part:

First, the filing of a proof of claim against the estate by a governmental unit is a waiver by that governmental unit of sovereign immunity with respect to compulsory counterclaims, as defined in the Federal Rules of Civil Procedure, that is, counterclaims arising out of the same transaction or occurrence. The governmental unit cannot receive a distribution from the estate without subjecting itself to liability it has to the estate within the confines of a compulsory counterclaim rule. Any other result would be one-sided. The counterclaim by the estate against the governmental unit is without limit.

Second, the estate may offset against the allowed claim of a governmental unit up to the amount of the governmental unit's claim, any claim that the debtor and thus the estate, has against the governmental unit, without regard to whether the estate's claim arose out of the same transaction or occurrence as the government's claim. Under this provision, the setoff permitted is only to the extent of the governmental unit's claim. No affirmative recovery is permitted. Subsection (a) governs affirmative recovery.

Though this section creates a partial waiver of immunity when the governmental unit files a proof of claim, it does not waive immunity if the debtor or trustee, and not the governmental unit, files proof of a governmental unit's claim....

S.Rep. No. 95–989, 95th Cong., 2d sess., at 29–30, U.S.Code Cong. & Admin.News 1978, pp. 5787, 5815–5816.

9. In *Federman v. Empire Fire and Marine Ins. Co.,* 597 F.2d 798, 812 (2d Cir.1979), the court of appeals listed three factors to be considered when determining whether a counterclaim is compulsory: (1) the identity of facts between the original claim and the counterclaim; (2) the mutuality of proof; and (3) the logical relationship between the original claim and the counterclaim. The bankruptcy court held that the difference in the transactions involved precluded a finding that the estate's claim was compulsory in nature.

*sive* counterclaims (i.e., those *not* arising "out of the same transaction or occurrence" out of which the governmental unit's claim arose) may be prosecuted only to the extent that they offset the claims brought by the governmental unit (subsection (b)).

■ The trustee concedes:

Judge Krechevsky is correct to state, in regard to the Trustee's and the state's claim, that "the transactions which give rise to each type of tax liability are different." [*Zera*, slip op. at 9.] The tax warrant that is the subject of the Trustee's claim arose from a different source than the proof of claim.

Brief of the Cross-Appellant at 6. To concede that, however, is to concede the ultimate issue, because, if the trustee's claim against Revenue is *not* a compulsory counterclaim to Labor's claim against the estate, then it is not within the purview of subsection (a). Thus, the bankruptcy court validly determined that Connecticut had not waived its immunity with respect to the preferential transfer transaction merely because one of its agencies had filed a proof of claim for payment of other kinds of taxes allegedly owed by the debtor.

*Subsection (c)*

■ The bankruptcy court, in construing § 106(c), relied heavily on its ruling in *In re Willington*, 39 B.R. 781, 785 (Bankr.D. Conn.1984). The bankruptcy court there held that: (1) § 106(c) clearly and unambiguously expressed Congress' intention to waive the common-law sovereign immunity of states by making them subject to bankruptcy court orders issued pursuant to any provision of the bankruptcy laws containing a reference to "creditor," "entity," or "governmental unit"; (2) 28 U.S.C. § 1471(b) [10] provided the jurisdictional vehicle by which the liability created by § 106(c) could be enforced in federal court,

thereby abrogating the eleventh amendment immunity of states; and (3) Congress' authority pursuant to the Bankruptcy Clause of the Constitution was sufficient to empower Congress to do what it had accomplished in § 106(c) and § 1471(b). *Accord McVey Trucking, Inc. v. Secretary of State of Illinois (In re McVey Trucking, Inc.)*, 812 F.2d 311 (7th Cir.1987).)

In the case at bar, the bankruptcy court found that, because the provision governing the avoidance of preferential transfers (11 U.S.C. § 547) contained the word "creditor," it was, by virtue of § 106(c), applicable to any governmental unit, including Revenue. Thus, § 547(b), when read in conjunction with § 550(a) [11] (which also contains one of the § 106(c) trigger words, to wit, "entity"), authorized the trustee to recover from the State treasury the money Zera's debtor paid in satisfaction of Zera's sales and use tax obligations.

With all due respect to the bankruptcy court and the Seventh Circuit, this court has a different view of § 106(c), one not requiring a pronouncement on the momentous constitutional issues reached in *Willington* and *McVey*. As explained in this court's ruling on the *Willington* appeal, the critical words of subsection (c) are contained in its opening subordinate clause: "Except as provided in subsections (a) and (b) of this section, . . . ." Those words indicate that the waiver of sovereign immunity effected by subsection (c) is limited by the exceptions provided in subsection (a) and (b) so that the *only* situation in which state funds can actually be ordered by the bankruptcy court to be paid to the estate is pursuant to subsection (a) under circumstances where the state files a proof of claim and the estate can assert a compulsory counterclaim which exceeds the amount of the state's claim.

**10.** 28 U.S.C. § 1471(b) provides: "Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction conferred by this section on the district courts."

**11.** 11 U.S.C. § 550(a) provides:

Except as otherwise provided in this section, to the extent that a transfer is avoided under section . . . 547, . . . the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—

(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made. . . .

It is conceded that § 106(c) was specifically designed to abrogate sovereign immunity in preference actions, even when the governmental unit files no proof of claim.[12] However, "properly construed," as the United States argues in its intervening brief,

> § 106(c) permits the trustee to bring preference actions against a sovereign in a bankruptcy court [only] where that court has jurisdiction to enforce its order. Thus, with regard to actions *in rem*, where the trustee seeks to set aside a preferential lien of a sovereign on property within the estate, the sovereign would be bound by the bankruptcy court's determination notwithstanding its failure to file a proof of claim.... *However, the legislative history does not reveal that sovereign units would be liable even for preference actions which would expend themselves on the sovereign's treasury in the form of retroactive monetary damages.*

Intervening Brief of the United States at 8 (emphasis added).[13]

Where the eleventh amendment immunity of a state is in the balance, the Supreme Court requires "an unequivocal expression of congressional intent" that the states' immunity was meant to be compromised. *Pennhurst State School and Hospital v. Halderman,* 465 U.S. 89, 99, 104 S.Ct. 900, 907, 79 L.Ed.2d 67 (1984). Neither 11 U.S.C. 106(c) nor 28 U.S.C. § 1471 or 11 U.S.C. § 547(b) are unequivocal expressions of congressional intent to abrogate the states' immunity to suit in bankruptcy court for recovery of funds from the state treasury.

Accordingly, the order of the bankruptcy court dismissing Revenue's motion to dismiss is reversed and the cause is remanded to that court for the purpose of dismissing the action against Revenue.

SO ORDERED.

---

12. Under prior law, the United States was immune from preference actions, even where it filed a proof of claim. *In re American Boiler Works, Inc.,* 123 F.Supp. 352 (W.D.Pa.1954), *aff'd,* 220 F.2d 319 (3d Cir.1955).

13. In *McVey,* the Seventh Circuit rejected the distinction between voiding a preferential tax lien and ordering the return of funds in the state treasury:

> A tax lien, like a claim for the proceeds of its bank accounts, is an asset of a state treasury. Voiding a lien is little different from ordering the state treasurer to pay over a portion of the contents of the state's bank account. If Article III allows a court to take the former action, it must certainly allow the latter.

812 F.2d at 323. If, however, the eleventh amendment was intended to accomplish anything, it was to prevent raids on the State treasury conducted in federal court. When resolving delicate issues involving state/federal relations, the difference between voiding a State's tax lien and ordering payment from the State's bank account is crucial. That difference is similar in concept to the one between according State property tax exemptions to religious organizations and subsidizing religious organizations with State funds: the impact on the State treasury may be equally severe, but the former is constitutional and the latter is not.