850 F.2d 50
 57 USLW 2001, 17 Bankr.Ct.Dec. 1349,
Bankr. L. Rep. P 72,387,
Medicare&Medicaid Gu 37,168
 In re WILLINGTON CONVALESCENT HOME, INC., Debtor.
Martin W. HOFFMAN, Trustee, Plaintiff-Appellant,
v.
STATE OF CONNECTICUT, DEPARTMENT OF INCOME MAINTENANCE and
State of Connecticut, Department of Health
Services, Defendants-Appellees,
United States of America, Intervenor-Appellee.
In re Edward ZERA, Debtor.
Martin W. HOFFMAN, Trustee, Plaintiff-Appellant,
v.
STATE OF CONNECTICUT, DEPARTMENT OF REVENUE SERVICES,
Defendant-Appellee,
United States of America, Intervenor-Appellee.
 Nos. 481, 482, Dockets 87-5021, 87-5023.
 United States Court of Appeals,
Second Circuit.
 Argued Jan. 27, 1988.
Decided June 15, 1988.
 
 Martin W. Hoffman, Trustee, Hartford, Conn., in both cases for plaintiff-appellant.
 Kenneth A. Graham, Asst. Connecticut State Atty. Gen., Hartford, Conn. (Joseph I. Lieberman, Connecticut State Atty. Gen., of counsel) for defendants-appellees State of Conn., Dept. of Income Maintenance and Dept. of Health Services.
 Carl J. Schuman, Asst. Connecticut State Atty. Gen., Hartford, Conn. (Joseph I. Lieberman, Connecticut State Atty. Gen., Jonathan L. Ensign, Asst. Atty. Gen., of counsel) for defendant-appellee State of Conn., Dept. of Revenue Services.
 Tracy J. Whitaker, Atty., U.S. Justice Dept., Washington, D.C. (Richard K. Willard, Asst. U.S. Atty. Gen., J. Christopher Kohn, Atty., U.S. Justice Dept., Washington, D.C., Stanley A. Twardy, Jr., U.S. Atty. D. Conn., Hartford, Conn., of counsel) in both cases for intervenor-appellee.
 Before OAKES, NEWMAN and MINER, Circuit Judges.
 MINER, Circuit Judge:
 
 
 1
 Plaintiff-appellant Martin W. Hoffman, as trustee for Willington Convalescent Home, Inc. and for Edward Zera in two separate and unrelated Chapter 7 proceedings under the Bankruptcy Code, 11 U.S.C. Sec. 101 et seq. (1982 & Supp. IV 1986) ("the Code"), commenced adversarial proceedings in the United States Bankruptcy Court for the District of Connecticut (Krechevsky, J.) against defendants-appellees State of Connecticut et al. ("Connecticut" or "the state"). The separate complaints sought to recover $64,010.24 for Willington's services under Connecticut's Medicaid Program and to avoid and recover as a preference $2,100.62 collected in back state sales and use taxes owed by Zera. The bankruptcy court allowed the actions over Connecticut's assertion of immunity from suit in the federal courts under the eleventh amendment of the United States Constitution, finding that Congress had abrogated the state's immunity from these actions in Sec. 106 of the Code, 11 U.S.C. Sec. 106(c).[1] On appeal to the United States District Court for the District of Connecticut (Dorsey, J.), the court reversed the bankruptcy court and ordered that the trustee's suits be dismissed as barred by the eleventh amendment. The trustee appeals from these judgments. We affirm.
 
 BACKGROUND
 
 2
 Willington Convalescent Home, Inc. ("Willington"), a nursing home operator, contracted with the State of Connecticut under its Medicaid Program to admit Medicaid eligible patients at a per diem rate, which the state determined from cost reports that Willington submitted. After Medicaid payments are made, the Connecticut Department of Income Maintenance conducts field audits of the costs claimed and may adjust retroactively a facility's per diem rate and deduct past Medicaid payments, for costs improperly claimed, from present Medicaid payments for current services, see Conn. Agencies Regs. 17-311-53. A field audit of Willington in late 1980 revealed that its claims of $294,007.00 in real property costs were allowable only to the extent of $22,500.00 and that Willington had received Medicaid overpayments for five years. Accordingly, the state revised Willington's per diem rates and began recouping the past overpayments from current payments to Willington. Willington made a timely request for review of the adjustment as to three of the years pursuant to Conn.Gen.Stat. Sec. 17-311. Subsequently, however, Willington moved to postpone indefinitely a hearing on its request.
 
 
 3
 In 1982, Willington filed for Chapter 11 bankruptcy, but continued operation and participation in the Medicaid program until it closed in April 1983. Willington at no time submitted its Medicaid contract with the state to the bankruptcy court for assumption or rejection. Although Willington still owed $121,408.00 at its closing, the state filed no proof of claim.
 
 
 4
 After Willington's case was converted to Chapter 7 in July 1983, appellant Hoffman was appointed trustee and commenced an adversarial action--in essence, a turnover proceeding under Sec. 542(b)[2]--against the state to recover $64,010.24 for Willington's Medicaid services during March 1983. The state admitted that Willington had rendered these services, but asserted sovereign immunity from the trustee's suit as well as the right to recoup overpayments.
 
 
 5
 Likewise, Hoffman brought an adversarial proceeding against the Connecticut Revenue Department as trustee in the Chapter 7 case of Edward Zera. Zera owed the state overdue sales and use taxes, a renewal fee and penalties and interest in connection with a business he owned. In September 1983, the Revenue Department issued a tax warrant, which resulted in payment of $2,100.62 to the state.
 
 
 6
 Zera filed for bankruptcy on October 7, 1983, and Hoffman filed a complaint on January 5, 1984 seeking to avoid the $2,100.62 payment as a preference, see 11 U.S.C. Sec. 547(b),[3] and to recover the monies transferred to the state, see id. Sec. 550(a). The state asserted both sovereign and eleventh amendment immunities from suit, and moved to dismiss the action.
 
 
 7
 In each case, the bankruptcy court denied Connecticut's motion to dismiss. See Matter of Willington Convalescent Home, Inc., 39 B.R. 781, 792 (Bankr.D.Conn.1984); Matter of Zera, No. 2-83-00754, slip op. at 14 (Bankr.D.Conn. June 8, 1984). Judge Krechevsky concluded that Congress had intended Sec. 106(c) to abrogate the state's eleventh amendment immunity from suit under 11 U.S.C. Secs. 542(b), see Willington, 39 B.R. at 786-88, and 547(b), see Zera, slip op. at 11-14, and had authorized federal courts to hear such suits pursuant to 28 U.S.C. Sec. 1471(b), the Code's former jurisdictional section,[4] Willington, 39 B.R. at 789; Zera, slip op. at 10-11. The bankruptcy court found that the Bankruptcy Clause, U.S. Const., art. I, Sec. 8, cl. 4, empowered Congress to do so. See Willington, 39 B.R. at 789-91; Zera, slip op. at 11.
 
 
 8
 The state appealed from both decisions to the United States District Court for the District of Connecticut. The United States successfully moved to intervene to present argument on the constitutionality of Sec. 106. On appeal, the district court rejected the bankruptcy judge's interpretation of Sec. 106(c) and therefore did not reach the constitutional issue. See In re Willington Convalescent Home, Inc., 72 B.R. 1002, 1012 (D.Conn.1987); In re Zera, 72 B.R. 997, 1002 (D.Conn.1987). Judge Dorsey found that the bankruptcy court's analysis was "premised on a construction of Sec. 106(c) which cannot readily be harmonized with subsections (a) and (b)," Willington, 72 B.R. at 1007. He emphasized that Sec. 106(c) should not be read in isolation from subsections (a) and (b), id. Furthermore, the district court reasoned, since subsections (a) and (b) provide for limited state exposure to compulsory or permissive counterclaims after it has filed a proof of claim against the estate, a broad reading of subsection (c), "permit[ting] suits against the state for retroactive money damages irrespective of whether the state had" filed a proof of claim, would render subsections (a) and (b) "mere surplusage." Id. Judge Dorsey noted that alleged waivers of sovereign immunity "must be strictly construed in favor of the sovereign," id. at 1008, and the court must be " 'certain' " that " 'an unequivocal expression' " of Congress' intent to waive the states' immunity is " 'in the statute itself,' " id. Reviewing "the language and legislative history [of Sec. 106] ... as well as the better reasoned case law," the district court held that Sec. 106(c) was a limited waiver of sovereign immunity that "did not authorize a suit for retrospective money damages against the State of Connecticut," id. at 1012. "Because it is not 'certain' that Congress provided a cause of action against a state" for retrospective monetary relief under Sec. 542(b), id., or Sec. 547(b), see Zera, 72 B.R. at 1002, the bankruptcy court had no jurisdiction in either case to adjudicate the trustee suits. Accordingly, the bankruptcy court's orders were reversed, see Willington, 72 B.R. at 1012; Zera, 72 B.R. at 1002. The trustee's action was dismissed in Willington, 72 B.R. at 1012, and in Zera was remanded to the bankruptcy court for dismissal, 72 B.R. at 1002.
 
 
 9
 On appeal, trustee Hoffman argues that the bankruptcy court properly held that Congress intended Sec. 106(c) to waive state sovereign and eleventh amendment immunities from suit under Secs. 542(b) and 547(b). We agree with the district court that the waiver of immunity under Sec. 106(c) extends neither to turnover proceedings under Sec. 542(b) nor to actions for the recovery of funds after a preferential transfer is avoided under Sec. 547(b). We therefore affirm in both cases.
 
 DISCUSSION
 
 10
 The resolution of this appeal turns on how Congress intended Sec. 106(c) to affect a state's eleventh amendment immunity from suit in federal court. "[T]he starting point for interpreting a statute is the language of the statute itself," Consumer Prod. Safety Comm'n v. GTE Sylvania, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980), and statutory provisions must be construed as a whole, not in isolation, see, e.g., United States v. Morton, 467 U.S. 822, 828, 104 S.Ct. 2769, 2773, 81 L.Ed.2d 680 (1984). "We may also examine the statute's legislative history to ensure that the meaning we have ascribed to ... [its] words fits" the legislative purpose. Pompano v. Michael Schiavone & Sons, Inc., 680 F.2d 911, 913 (2d Cir.), cert. denied, 459 U.S. 1039, 103 S.Ct. 454, 74 L.Ed.2d 607 (1982). Accordingly, we look not only to the language of Sec. 106(c), but also to that of Sec. 106(a) and (b), as well as to the legislative history of Sec. 106, to determine whether subsection (c) waives a state's immunity from a turnover proceeding or recovery of an avoided preferential transfer.
 
 1. Language of Sec. 106
 
 11
 Section 106 addresses waiver of sovereign immunity by "governmental units" in bankruptcy cases. A governmental unit is defined to include the "United States; [s]tate; [or] [c]ommonwealth" or "department, agency or instrumentality" thereof. 11 U.S.C. Sec. 101(26). Section 106(a) provides that "[a] governmental unit is deemed to have waived sovereign immunity with respect to any claim against [it] ... that is property of the estate and that arose out of the same transaction or occurrence out of which such governmental unit's claim arose." This subsection thus conditions the state's "receiv[ing] a distribution from the estate" upon waiver of immunity against any compulsory counterclaims asserted against it "without limit" in a bankruptcy proceeding. See H.R.Rep. No. 595, 95th Cong., 1st Sess. 317 (1977), reprinted in 1978 U.S.Code Cong. & Admin.News 5963, 6274; S.Rep. No. 989, 95th Cong., 2d Sess. 29 (1978), reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5815. Accordingly, Sec. 106(a) provides for "affirmative recovery," see H.R.Rep. No. 595, 1978 U.S.Code Cong. & Admin.News 5963, supra ; S.Rep. No. 989, 1978 U.S.Code Cong. & Admin.News 5787, supra, including money judgments, see In re Inslaw, Inc., 76 B.R. 224, 234 (Bankr.D.D.C.1987).
 
 
 12
 Section 106(b) allows "any claim against [a] governmental unit that is property of the estate" to be set off against a governmental unit's "allowed claim or interest." The debtor thus has a right to a setoff against a governmental unit "to the extent of" that unit's claim against the estate, see H.R.Rep. No. 595, 1978 U.S.Code Cong. & Admin.News 5963, supra ; S.Rep. No. 989, 1978 U.S.Code Cong. & Admin.News 5787, supra. Moreover, the "allowed claim" language has been construed as incorporating Sec. 502(a)'s rule that "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed " (emphasis added). See, e.g., In re Davis, 20 B.R. 519, 521 (Bankr.M.D.Ga.1982). Thus, Sec. 106(b) is not triggered unless the governmental unit has asserted a claim against the estate.
 
 Section 106(c) provides that:
 
 13
 Except as provided in subsections (a) and (b) of this section and notwithstanding any assertion of sovereign immunity--
 
 
 14
 (1) a provision of this title that contains "creditor", "entity", or "governmental unit" applies to governmental units; and
 
 
 15
 (2) a determination by the court of an issue arising under such a provision binds governmental units.
 
 
 16
 The "Except as provided in" language that introduces this subsection unmistakably distinguishes it from subsections (a) and (b). Thus, while (a) and (b) are not triggered unless the government has asserted a claim against the debtor's estate, (c) has no such requirement. Matter of Neavear, 674 F.2d 1201, 1204 (7th Cir.1982). Moreover, counterclaims and setoffs under (a) and (b) "may be bottomed on non-bankruptcy statutory or common law rights which could not otherwise form the basis for a law suit against the [g]overnment because of the sovereign immunity doctrine." Matter of Community Hosp., 15 B.R. 785, 789 (Bankr.S.D.N.Y.1981). Subsection (c) relates only to issues that arise under "a provision of Title 11 ... that contain[s] the word 'creditor' or the word 'entity' or the word 'governmental unit.' " Davis, 20 B.R. at 522. The most important distinction, however, goes to the scope of these subsections. Both Sec. 106(a) and (b) waive sovereign immunity as to "any claim asserted against such governmental unit" providing for affirmative monetary recoveries on counterclaims and for monetary recoveries within the confines of a setoff. However, Sec. 106(c)(2) provides only that governmental units are bound by "a determination by the court of an issue arising under" a provision containing one of the "triggering" terms enumerated in subsection (c)(1), 11 U.S.C. Sec. 106(c)(2) (emphasis added). Thus, the plain language of Sec. 106(c)(1) and (2), particularly when read in light of Sec. 106(a) and (b),[5] waives state sovereign immunity only to the extent necessary for the bankruptcy court to determine a state's rights in the debtor's estate.
 
 2. Legislative History of Sec. 106
 
 17
 The legislative history of Sec. 106, although not extensive, supports this interpretation. As proposed in H.R. 8200 and S. 2266, Sec. 106 provided only for the waivers now embodied in subsections (a) and (b). The House Report on H.R. 8200 stated that:
 
 
 18
 Section 106 provides for a limited waiver of sovereign immunity in bankruptcy cases. Though Congress has the power to waive sovereign immunity for the Federal government completely in bankruptcy cases, the policy followed here is designed to achieve approximately the same result that would prevail outside of bankruptcy. Congress does not, however, have the power to waive sovereign immunity completely with respect to claims of [the] bankrupt estate against a [s]tate, though it may exercise its bankruptcy power through the supremacy clause to prevent or p[r]ohibit [s]tate action that is contrary to bankruptcy policy.
 
 
 19
 H.R. No. 595, supra, at 317, reprinted in U.S.Code Cong. & Admin.News at 6274. Both bills "preserve[d] sovereign immunity for tax authorities by excepting government tax claims from the preference rules," S.Rep. No. 1106, 95th Cong., 2d Sess. 6 (1978); see H.R.Rep. No. 595, supra, at 373, reprinted in 1978 U.S.Code Cong. & Admin.News at 6329.
 
 
 20
 However, in the compromise bill that resulted from H.R. 8200 and S. 2266, the present subsection (c) was added. The floor statements explained that Sec. 106(c) "codifies In re Gwilliam, 519 F.2d 407 (9th Cir. [ ] 1975) and In re Dolard, 519 F.2d 282 (9th Cir. [ ] 1975)" and "compl[ies] with the requirement in case law that an express waiver of sovereign immunity is required in order to be effective," 124 Cong.Rec. H11091 (daily ed. Sept. 28, 1978) (Rep. Edwards); id. S17407 (daily ed. Oct. 6, 1978) (Sen. DeConcini). In both Gwilliam and Dolard, the Internal Revenue Service ("IRS") asserted that the bankruptcy court had no jurisdiction to determine the amount or dischargeability of unpaid federal income taxes unless the IRS had filed a proof of claim. However, Sec. 2(a)(2A), added to the Bankruptcy Act in 1966, provided that bankruptcy courts had jurisdiction to determine "the amount or legality of any unpaid tax." 11 U.S.C. Sec. 11(a)(2A) (1966). Although the Senate Judiciary Committee Report pertaining to this provision stated that the addition to the Bankruptcy Act of Sec. 2(a)(2A) did not change the requirement that a proof of claim be filed before the bankruptcy court exercises jurisdiction, see S.Rep. No. 999, 89th Cong., 2d Sess., reprinted in 1966 U.S.Code Cong. & Admin.News 2442, 2452, the Gwilliam court concluded that this Report did "not speak the consensus of Congress" and was better ignored "rather than to injudiciously batter the expressed language of Sec. 11(a)(2A) to a nullity," 519 F.2d at 410. Accordingly, the Ninth Circuit held that the bankruptcy court had jurisdiction to determine the amount and dischargeability of unpaid federal taxes accruing before bankruptcy, id. at 408, 410, or after bankruptcy, Dolard, 519 F.2d at 286, even if the IRS failed to file a proof of claim.
 
 
 21
 The primary purpose, then, behind 106(c) was to codify the results that the IRS thought were worth opposing in Gwilliam and Dolard. See Neavear, 674 F.2d at 1204. Although the floor statements to Sec. 106(c) also make clear that its applicability "is not limited to those issues, but permits the bankruptcy court to bind governmental units on other matters as well," 124 Cong.Rec., supra, at H11091, S17407 (emphasis added), they do not indicate that the scope of the sovereign immunity waiver was intended to extend beyond determinations of the bankruptcy court. Instead, these legislative statements show that governmental units are bound not only by determinations involving the amount and dischargeability of tax claims, but also by determinations made under any Code section containing a triggering term.
 
 3. Eleventh Amendment Immunity
 
 22
 The trustee here urges that Sec. 106(c) can be read to authorize a suit to recover monies from a state under any Code provision containing a triggering term, regardless of the type of relief sought. Because Secs. 542(b) and 547(b) both contain triggering terms and the bankruptcy court has jurisdiction of actions pursuant to them under 28 U.S.C. Secs. 157(a) and 1334(b), the trustee contends that Congress clearly abrogated a state's eleventh amendment immunity from such suits in federal court.[6] These arguments, however, fail to surmount the heavy burden of showing congressional waiver of eleventh amendment immunity from actions for money recoveries.
 
 
 23
 The eleventh amendment "limits the grant of judicial authority in Art[icle] III" of the Constitution, Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 98, 104 S.Ct. 900, 906, 79 L.Ed.2d 67 (1984), prohibiting the exercise of federal jurisdiction over a suit against an unconsenting state "for damages, past debts or retroactive relief of any type," 1 R. Rotunda, J. Nowak & J. Young, Treatise on Constitutional Law: Substance and Procedure, Sec. 2.12, at 87 (1986), particularly claims that "involve[ ] the payment of public funds from the state treasury," McClary v. O'Hare, 786 F.2d 83, 89 (2d Cir.1986); see Quern v. Jordan, 440 U.S. 332, 337, 99 S.Ct. 1139, 1143, 59 L.Ed.2d 358 (1979); Edelman v. Jordan, 415 U.S. 651, 663, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974). A waiver of this immunity will be found "only where stated 'by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction,' " Edelman, 415 U.S. at 673, 91 S.Ct. at 1361. "Congress [must] unequivocally express its intention to abrogate" eleventh amendment immunity, and will do so only "by making its intention unmistakably clear in the language of the statute," Atascadero State Hospital v. Scanlon, 473 U.S. 234, 242, 105 S.Ct. 3142, 3147, 87 L.Ed.2d 171 (1985). Moreover, statutes that purport to waive immunity are construed strictly in the sovereign's favor. See Gray v. Bell, 712 F.2d 490, 508 (D.C.Cir.1983) (citing McMahon v. United States, 342 U.S. 25, 27, 72 S.Ct. 17, 19, 96 L.Ed. 26 (1951)), cert. denied, 465 U.S. 1100, 104 S.Ct. 1593, 80 L.Ed.2d 125 (1984).
 
 
 24
 We do not believe that Congress intended to waive eleventh amendment immunity and to authorize suits for money damages against a state by enacting a provision that "binds" governmental units by bankruptcy court "determination[s]." Congress has in no way made "its intention unmistakably clear in the language of the statute" that states are subject to adversarial proceedings in bankruptcy that involve payment of state funds to the estate. See Atascadero, 473 U.S. at 246, 105 S.Ct. at 3149 (statutory authorization of suit in federal court against any federal fund recipient insufficient to waive state's eleventh amendment immunity). A few courts have interpreted Sec. 106(c) to allow adversarial actions for money recoveries against states in bankruptcy courts in both turnover proceedings, see In re Prime, Inc., 44 B.R. 924, 927 (Bankr.W.D.Mo.1984) (dicta); see also In re Vazquez, 788 F.2d 130, 133 (3d Cir.1986) (action to recover debt collected in violation of Sec. 524(a)), cert. denied sub nom. Vazquez v. Pennsylvania Dep't of Public Welfare, --- U.S. ----, 107 S.Ct. 414, 93 L.Ed.2d 365 (1986); but see In re Crum, 20 B.R. 160, 161 (Bankr.D.Idaho 1982); In re Regal Constr. Co., 18 B.R. 353, 358 (Bankr.D.Md.1982); In re Ramos, 12 B.R. 250 (Bankr.N.D.Ill.1981), as well as in preference actions, see Matter of McVey Trucking, Inc., 812 F.2d 311, 326-27 (7th Cir.), cert. denied sub nom. Edgar v. McVey Trucking Co., --- U.S. ----, 108 S.Ct. 227, 98 L.Ed.2d 186 (1987); In re T & D Mgt. Co., 40 B.R. 781, 789-90 (Bankr.D.Utah 1984) (dicta). However, the decisions allowing such actions either do not analyze the issue under the Supreme Court's standards for finding a congressional waiver of eleventh amendment immunity or do not reflect an appreciation for the stringency of those standards. In sum, therefore, we find that turnover proceedings under Sec. 542(b) and preference actions under Sec. 547(b) seeking monetary recoveries from a state are outside the scope of Sec. 106(c) and thus barred by the eleventh amendment.
 
 
 25
 The trustee, nevertheless, argues that congressional intent is clear that Sec. 106(c) at least allows a state to be sued for recovery of a preferential monetary transfer that is avoided under Sec. 547(b). He points to a passage from the floor statements, concerning the applicability of Sec. 106(c) to other bankruptcy issues, which he asserts supports his argument: "For example, section 106(c) permits a trustee or debtor in possession to assert avoiding powers under title 11 against a governmental unit; contrary language in the House report to H.R. 8200 is thereby overruled," 124 Cong.Rec., supra, at H11091, S17407. This legislative history, however, does not establish that Congress had the clear and unequivocal intention to waive eleventh amendment immunity as to actions against states for recovery of preferential money transfers. Whatever questions this passage may raise about Congress' intention as to preference actions, we must resolve them against finding a waiver of state immunity from money recoveries where, as in Sec. 106(c), Congress has not made "its intention unmistakably clear in the language of the statute," Atascadero, 473 U.S. at 242, 105 S.Ct. at 3147 (emphasis added).
 
 CONCLUSION
 
 26
 Having considered the language and legislative history of Sec. 106 in light of the strict standard applicable to claims of congressional waiver of state eleventh amendment immunity, we hold that Sec. 106(c) does not allow for actions pursuant to Sec. 542(b) or Sec. 547(b) to recover monies from a state. Accordingly, we affirm the judgments of the district court.
 
 
 
 [1]
 Section 106 provides in full:
 (a) A governmental unit is deemed to have waived sovereign immunity with respect to any claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which such governmental unit's claim arose.
 (b) There shall be offset against an allowed claim or interest of a governmental unit any claim against such governmental unit that is property of the estate.
 (c) Except as provided in subsections (a) and (b) of this section and notwithstanding any assertion of sovereign immunity--
 (1) a provision of this title that contains "creditor", "entity", or "governmental unit" applies to governmental units; and
 (2) a determination by the court of an issue arising under such a provision binds governmental units.
 
 
 [2]
 We reject Connecticut's contention that the action in Willington was a "related" proceeding for past contractual money damages, and not a Sec. 542(b) proceeding. The section provides in pertinent part that "an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee," 11 U.S.C. Sec. 542(b). The trustee sought to "recover a money judgment ... for services sold and delivered on account" in "the amount of $64,010.24," Appendix for Willington at 6 (trustee's complaint). Connecticut concedes that Willington rendered the services, but claims that it has a recoupment right which subsumes the entire payment due Willington. See 39 B.R. at 783. The trustee's complaint, however, "clearly alleges" that Connecticut "owe[s] a matured debt that is property of the estate," In re Rawson, 40 B.R. 167, 169 (Bankr.N.D.Ohio 1984). Although "actions on account and debt and contract generally arise under state law," Sec. 542(b) "sufficient[ly] ... arrogate[s] the general law concepts and transform[s] them into bankruptcy law," Matter of Kakolewski, 29 B.R. 572, 574 (Bankr.W.D.Mo.1983) (footnote omitted). "The mere fact that" Connecticut denies that it owes the matured debt for Willington's services because of a recoupment right "does not take the trustee's action outside the scope of section 542(b)," Rawson, 40 B.R. at 169
 
 
 [3]
 Section 547(b) provides:
 Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor--
 (1) to or for the benefit of a creditor;
 (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
 (3) made while the debtor was insolvent;
 (4) made--
 (A) on or within 90 days before the date of the filing of the petition; or
 (B) between 90 days and one year before the date of the filing of the petition, if such creditor, at the time of such transfer--
 (i) was an insider; and
 (ii) had reasonable cause to believe the debtor was insolvent at the time of such transfer;
 and
 (5) that enables such creditor to receive more than such creditor would receive if--
 (A) the case were a case under chapter 7 of this title;
 (B) the transfer had not been made; and
 (C) such creditor received payment of such debt to the extent provided by the provisions of this title.
 
 
 [4]
 Because Sec. 1471(c) gave the bankruptcy courts "all of the jurisdiction conferred by this section on the district courts," the Supreme Court declared Sec. 1471 an unconstitutional delegation to the article I bankruptcy courts of powers reserved to article III courts. See Northern Pipeline Constr. Co. v. Marathon Pipeline Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). In 1984, Congress enacted 28 U.S.C. Secs. 157 and 1334 to replace Sec. 1471. In the meantime, during which the Willington and Zera adversarial proceedings were commenced, "[a]n emergency resolution adopted by the United States District Judges for the District of Connecticut temporarily restored the bankruptcy court's" jurisdiction over civil proceedings "arising in or related to" title 11 cases, subject to "review and control by the district court," Willington, 72 B.R. at 1007 n. 12
 
 
 [5]
 The district court relied in part on the argument that the bankruptcy court's reading of Sec. 106(c) rendered subsections (a) and (b) "mere surplusage," see 72 B.R. at 1007-08 & n. 13, 1011 (citing In re Regal Constr. Co., 18 B.R. 353 (Bankr.D.Md.1982)). However, the bankruptcy court's interpretation leaves intact critical differences that preclude (a) and (b) from being considered surplusage. As observed in Matter of Neavear, 674 F.2d 1201 (7th Cir.1982), Sec. 106(c), "unlike sections 106(a) and (b), does not condition the waiver of sovereign immunity upon the filing of a proof of claim," id. at 1204. See also Matter of McVey Trucking, Inc., 812 F.2d 311, 327 (7th Cir.) (rejecting surplusage argument on basis of Neavear ), cert. denied sub nom. Edgar v. McVey Trucking Co., --- U.S. ----, 108 S.Ct. 227, 98 L.Ed.2d 186 (1987). Moreover, Sec. 106(a) and (b) are not tied to any particular Code sections, while subsection (c) applies only to those Code provisions containing "creditor," "entity," or "governmental unit." We, therefore, do not rely upon the surplusage argument in our analysis
 
 
 [6]
 Although Sec. 106 speaks only of "sovereign immunity," that term clearly encompasses eleventh amendment immunity to the extent that the governmental unit in question is a state. As Judge Krechevsky correctly observed:
 The term "sovereign immunity" embraces two distinct concepts--"whether [a State] may be sued," Pennhurst State School & Hospital v. Halderman, [465 U.S. 89, 99, 104 S.Ct. 900, 907, 79 L.Ed.2d 67 (1985),] ... or common-law sovereign immunity, and "where [a State] may be sued," id., or constitutional sovereign immunity in the [e]leventh [a]mendment.
 
 
 [39]
 B.R. at 788-89. Thus, if a bankruptcy court can make determinations that bind a state under Sec. 106(c), to that extent the state's eleventh amendment immunity from suit in federal court has been waived by Sec. 106(c)