**In re PM–II ASSOCIATES, INC., Debtor.**

**Allen W. MURRAY, Trustee for PM–II Associates, Inc., Plaintiff,**

v.

**Mary Ellen WITHROW, in her capacity as Treasurer, State of Ohio, et al., Defendants.**

Bankruptcy No. 2–85–04110.
Adv. No. 2–88–0054.

United States Bankruptcy Court,
S.D. Ohio, E.D.

May 17, 1989.

R.P. Cunningham, Arter and Hadden, Columbus, Ohio, for plaintiff.

Shawn H. Nau, Columbus, Ohio, for defendants.

## OPINION AND ORDER DENYING MOTION TO DISMISS

DONALD E. CALHOUN, Jr.,
Bankruptcy Judge.

This adversary proceeding presents the issue of whether a trustee appointed in a Chapter 11 proceeding can recover a payment by the debtor to the State of Ohio as a preferential transfer pursuant to 11 U.S.C. § 547. Resolution of this question requires a determination of whether 11 U.S.C. § 106 applies to the State in this situation and an examination of the elements which must be pleaded and proven to void a transfer under § 547(b) of the Bankruptcy Code.

Jurisdiction over this case is vested in the Court pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this district. This proceeding to void the transfer is a core matter which the Court is empowered to hear and determine under provisions of 28 U.S.C. § 157(b)(2)(F). The following opinion and order shall constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

### I. *Factual Background*

On September 3, 1985, the debtor PM–II Associates, Inc. was charged in a lawsuit by the defendant State of Ohio, with having violated provisions of the Ohio Anti–Pyramid Sales Law, O.R.C. §§ 1333.91, *et seq.*, and the Ohio Consumer Sales Practices Act, O.R.C. §§ 1345.01, *et seq.* The lawsuit was terminated as a condition to the entry of a consent judgment between the debtor and the Attorney General for the State of Ohio. On October 15, 1985, pursuant to the consent judgment, the debtor paid civil penalties to the defendant State

of Ohio of $7,500 and to defendant Franklin County of $2,500.

On December 10, 1985, the debtor filed for protection under Chapter 11 of the Bankruptcy Code. The State of Ohio filed a proof of claim for $850,000 with the Court on January 10, 1986, through the Attorney General, based on the earlier consent judgment. On March 10, 1986, the plaintiff Allen W. Murray, was appointed trustee for the debtor and subsequently brought this action to void the payments made to the defendants as preferential transfers pursuant to 11 U.S.C. § 547(b).

The State of Ohio maintains that sovereign immunity and the Eleventh Amendment bar this action, and also that the provisions of 11 U.S.C. § 547(b) have not been met.

## II. *Sovereign Immunity*

█ The interpretation and application of the provisions of § 106 are the center of the dispute before the Court. Section 106 of the Bankruptcy Code, entitled "Waiver of sovereign immunity", provides that:

(a) A governmental unit is deemed to have waived sovereign immunity with respect to any claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which such governmental unit's claim arose.

(b) There shall be offset against an allowed claim or interest of a governmental unit any claim against such governmental unit that is property of the estate.

(c) Except as provided in subsections (a) and (b) of this section and notwithstanding any assertion of sovereign immunity—

(1) a provision of this title that contains "creditor", "entity", or "governmental unit" applies to governmental units; and

(2) a determination by the court of an issue arising under such a provision binds governmental units.

11 U.S.C. § 106.

The provision of Title 11 which the trustee seeks to enforce against the State is § 547(b) which contains the word "creditor", and which then triggers the application of § 106(c)(1). "Creditor" is defined in § 101(9) to include an entity that has a claim against the debtor arising at or before the order for relief. "Entity" is then defined in § 101(14) to include governmental units. Thus § 547(b) appears to be applicable by both the definitions contained within the Code, and by the application of § 106(c)(1). "Governmental unit" is defined in § 101(24) to include a state or instrumentality of a state. Such a literal reading of the Code would seem to subject the State to the provisions of § 547(b) that the trustee is attempting to assert. In addition, the State's action in filing a proof of claim for $850,000 on January 10, 1986 would also subject the State to a waiver of sovereign immunity under the more limited conditions of § 106(a). *In re Holland,* 70 B.R. 409 (Bankr.S.D.Fla.1987).

It is the State's contention that it has immunity to suits for damages based on the Eleventh Amendment that can be abrogated in only two ways. The first method would be for the State to expressly waive its immunity and consent to suit in federal court by some provision of state law, which the State contends it has not done in this case. The second method is for Congress to abrogate the state's immunity to suit without the state's consent by expressly providing for suits against the state.

The State first argues that § 106(a) is not applicable to this action since the named defendant, Mary Ellen Withrow as Treasurer of the State of Ohio, has not filed a proof of claim against the estate and therefor has not waived sovereign immunity (proof of claim was filed through the Attorney General's office). This argument is transparent inasmuch as the State of Ohio is the real party in interest before the Court. *Edelman v. Jordan,* 415 U.S. 651, 663, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974) ("A suit 'seeking to impose a liability which must be paid from public funds in the state treasury' is a suit against the state."), as quoted in *Matter of McVey Trucking, Inc.,* 812 F.2d 311, 314 (7th Cir. 1987).

The second argument of the State is that any attempt by Congress to abrogate the state's Eleventh Amendment immunity under the Bankruptcy Code pursuant to Congress' Article I, section 8 powers over bankruptcies would be ineffective as being outside of the powers granted under section 5 of the Fourteenth Amendment.

The defendant State of Ohio cites the Supreme Court's decision in *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985) for the proposition that Congress can create a cause of action against the states *only* when acting pursuant to section 5 of the Fourteenth Amendment. This reading of the Supreme Court's opinion by the State appears to be unduly narrow and without support in the opinion. While *Atascadero* does stand for the proposition that Congress can create a cause of action against unconsenting states pursuant to section 5 of the Fourteenth Amendment, nothing in the language of that opinion limits Congress' power to do so only under section 5 of the Fourteenth Amendment. *Atascadero*, 473 U.S. at 238, 105 S.Ct. at 3145.

Indeed, the Supreme Court has more recently stated that, "We assume, without deciding or intimating a view of the question, that the authority of Congress to subject unconsenting [S]tates to suit in federal court is not confined to section 5 of the Fourteenth Amendment." *Welch v. State Dept. of Highways and Public Transportation*, 483 U.S. 468, 107 S.Ct. 2941, 97 L.Ed.2d 389 (1987). This is further supported by the Seventh Circuit decision in *Matter of McVey Trucking, Inc.*, 812 F.2d 311, 317 (7th Cir.1987) where the court stated that when Congress is acting under its Article I powers, the Eleventh Amendment does not prevent it from displacing the presumption of sovereign immunity by creating a cause of action against a state.

The *McVey* court went on to hold that when Congress acts pursuant to the Bankruptcy Clause, it is exercising a plenary power and when it does so, state sovereignty generally imposes no limits on Congress' ability to impose obligations on the states.

*McVey*, 812 F.2d at 320, 323 (citing *International Shoe Co. v. Pinkus*, 278 U.S. 261, 265, 49 S.Ct. 108, 110, 73 L.Ed. 318 (1929)). The First Circuit has also held that a waiver of sovereign immunity under § 106 is a reasonable and proper exercise of Congress' exclusive power over bankruptcies and that the forced waiver of immunity only insures that a state comes into the bankruptcy proceeding on equal terms with all others. *WJM, Inc. v. Mass. Dept. of Public Welfare*, 840 F.2d 996, 1003 (1st Cir.1988).

The State also argues that the language contained in the provisions of § 106(c) is not sufficiently specific to manifest an intention by Congress to serve as a general abrogation of the state's sovereign immunity for the majority of the sections in the Bankruptcy Code. In support of this position the State cites *Edelman*, 415 U.S. at 663, 94 S.Ct. at 1355–56, to say that a waiver of the state's immunity will be found only where stated by the most express language or by such overwhelming implication as to leave no other reasonable construction. The State also cites *Atascadero* for the proposition that Congress must unequivocally express its intention to abrogate the state's immunity and must make that intention unmistakably clear in the language of the statute. *Atascadero*, 473 U.S. at 242, 105 S.Ct. at 3147.

The language in § 106(c) of "... notwithstanding any assertion of sovereign immunity—" would seem to be a clear and unambiguous manifestation of Congress' intent. If the statutory language is not sufficiently clear to ascertain its plain meaning, the legislative history can often be used to clarify any disputed interpretations. A discussion in the case of *In the Matter of Remke*, 5 B.R. 299 (Bankr.E.D.Mich.1980) concerning the ability of a Chapter 11 trustee to use the § 106(c) waiver of immunity to subject the government to a § 547(b) action is directly on point:

"That this is what Congress intended to accomplish by the inclusion of subsection (c), is made clear by the legislative history to section 106. In commenting upon the effect of subsection (c), it states:

"Section 106(c) relating to sovereign immunity is new. The provision indicates that the use of the term 'creditor', 'entity', or 'governmental unit' in title 11 applies to governmental units notwithstanding any assertion of sovereign immunity and that an order of the court binds governmental units. The provision is included to comply with the requirement in case law that an express waiver of sovereign immunity is required in order to be effective. Section 106(c) codifies *In re Gwilliam*, 519 F.2d 407 (9th Cir.1975) and *In re Dolard*, 519 F.2d 282 (9th Cir.1975), permitting the bankruptcy court to determine the amount and dischargeability of tax liabilities owing by the debtor or the estate prior to or during a bankruptcy case whether or not the governmental unit to which such taxes are owed files a proof of claim. Except as provided in section 106(a) and (b), subsection (c) is not limited to those issues, but permits the bankruptcy court to bind governmental units on other matters as well. For example, section 106(c) permits a trustee or debtor in possession to assert avoiding powers under title 11 against a governmental unit; contrary language in the House report to H.R. 8200 is hereby overruled." 124 Cong.Rec. H 11,901 (Sept. 28, 1978); S 17,407 (Oct. 6, 1978)."

Pertinent, also, is the legislative history accompanying section 547, which states:

"... section 106(c) of the House amendment overrules contrary language in the House report with the result that the Government is subject to avoidance of preferential transfers." 124 Cong.Rec. H 11,907 (Sept. 28, 1978); S 17,414 (Oct. 6, 1978)."

*Remke*, at 301–302.

The leading case which supports the State's last assertion is *Hoffman v. Conn. Dept. of Income Maint. (In re Willington Convalescent Home, Inc.)*, 850 F.2d 50 (2nd Cir.1988). The court in *Willington* directly held "... that § 106(c) does not allow for actions pursuant to § 542(b) or § 547(b) to recover monies from a state." *Willington*, 850 F.2d at 57. In that decision, the Second Circuit Court construed the language of § 106(c) as insufficient to unequivocally express Congress' intention to abrogate Eleventh Amendment immunity in the language of the statute. *Id*, 850 F.2d at 56. That decision, however, seems to be in the distinct minority of case law interpreting the scope of § 106(c). *See McVey Trucking, Inc. v. Secretary of State of Illinois (In the Matter of McVey Trucking, Inc.)*, 812 F.2d 311 (7th Cir. 1987); *Neavear v. Schweiker (In the Matter of Neavear)*, 674 F.2d 1201 (7th Cir. 1982); *Pressimone v. IRS (In re Pressimone)*, 39 B.R. 240 (D.C.N.D.N.Y.1984); *Rhode Island Ambulance Services, Inc. v. Begin (In re Rhode Island Ambulance Services, Inc.)*, 92 B.R. 4 (Bankr.D.R.I. 1988); *Ellenberg v. DeKalb County, Ga. (In re Maytag Sales and Service, Inc.)*, 23 B.R. 384 (Bankr.N.D.Ga.1982); *Hawley v. United States Soc. Sec. Admin. (In the Matter of Hawley)*, 23 B.R. 236 (Bankr.E. D.Mich.1982); *Remke, Inc. v. United States (In re Remke, Inc.)*, 5 B.R. 299 (Bankr.E.D.Mich.1980).

### III. *Preferential Transfers*

■ Section 547 of the Bankruptcy Code contains provisions which deem certain transfers of interests to be preferential and therefore voidable by the trustee. The standards to avoid a preferential transfer are enumerated in § 547(b) which states:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider;

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

It is not alleged by the State of Ohio nor does the evidence present any of the circumstances enumerated in § 547(c) that would exempt the payment of the penalty to the State from the operation of provisions of § 547(b). For purposes of subsection (b)(1), the State qualifies as a "creditor" as defined in § 101(9) to include an entity that has a claim against the debtor that arose before the order of relief. The payment of the penalty was made after the earlier entry of the consent judgment between the parties, so it would satisfy § 547(b)(2) as being on account of an antecedent debt owed by the debtor before the transfer was made.

The State unequivocally states that a civil penalty may not be voided under provisions of § 547(b), yet cites no case law or Code section to support the pronouncement. The State goes on to argue that payment of a civil penalty could not be "on account of an antecedent debt" since there was no consideration exchanged by the creditor (State of Ohio). By examining the terms, it again appears that the State's argument is without merit.

"Debt" is defined in § 101(11) to mean liability on a claim. The liability of $7,500 to the State and $2,500 to Franklin County was voluntarily agreed to by the debtor as one of the terms of the consent judgment. "Antecedent", while not defined by the Code, is defined in *Black's* as "prior in point of time" and can be interpreted from provisions of § 547(c)(1) to mean *not* a contemporaneous exchange. *Black's Law Dictionary* 84 (5th ed.1979). From the facts before the Court, clearly the liability was incurred at the time the consent judgment was agreed to, which was prior to payment and was not a contemporaneous exchange. Additionally, in the provisions of § 523(a)(7) which list different debts to be exempted from the various discharges within the Code, it specifically lists "penalty, ... payable to and for the benefit of a governmental unit, ...". 11 U.S.C. § 523(a)(7).

That language would seem to clearly indicate that a penalty to be paid to the state is considered a debt for purposes of applying the Bankruptcy Code. This same conclusion was found persuasive by the Third Circuit in a recent decision holding that a criminal restitution order was a debt as long as it represented an obligation that any entity had a right to enforce against it. *Commw. of Pa. Dept. of Public Welfare v. Johnson–Allen (In re Johnson–Allen)*, 871 F.2d 421 (3rd Cir.1989).

Finally, the facts show ample consideration by both parties to the consent judgment. The consideration given by the debtor was to 1) cease and desist all further violations of O.R.C. §§ 1333.91 and 1345.01; 2) establish an $850,000 restitution fund for former PM–II distributors; and 3) payment of $25,000 in civil penalties, $15,000 of which was suspended contingent upon reparations being made to all distributors and no further violations occurring. The consideration given by the Attorney General in return was the termination of further prosecutions against the debtor in this matter. To suggest that there was no consideration is to say that the debtor ceased all operations, established an $850,000 restitution fund, and agreed to a $25,000 penalty for nothing in return. Clearly, there was and is sufficient consideration to support the consent judgment.

Section 547(b)(3) requires the debtor to have been insolvent when the transfer was made. Section 547(f) establishes a rebuttable presumption that the debtor was insolvent on and during the 90 days immediately preceding the filing of the petition. At this juncture, the Court's concern is merely with the sufficiency of the pleadings. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). Given the fact that the transfers occurred

during the 90 days immediately prior to the debtor filing his petition, and in light of the § 547(f) presumption of insolvency, the Court cannot conclude that the trustee has failed to state facts sufficient to support his claims against the State of Ohio.

The final condition listed in § 547(b)(5) is that the creditor must have received more than it would have received if no transfer had been made and the case was disposed of as a Chapter 7 distribution. Again, at this stage of the proceedings, the Court is not required to determine whether the trustee will ultimately prevail under § 547(b). *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Rather, the Court need only find that the trustee's complaint states facts sufficient to support his claims against the State. The trustee has stated that certain transfers to the State were made during the relevant period of insolvency that enabled the State to receive more than it would have, had the debtor filed a petition under Chapter 7. On these facts, the trustee has stated facts sufficient to withstand a motion to dismiss.

### IV. *Conclusion*

The defendant State of Ohio is held to have waived its sovereign immunity under § 106(a) of the Bankruptcy Code with respect to the $7,500 civil penalty since it filed a proof of claim with the Court. The State's immunity to suit is also waived by application of the provisions of § 106(c) of the Bankruptcy Code. Accordingly, the provisions of Bankruptcy Code § 547(b) are held applicable to the State. Furthermore, the Court finds that the trustee's complaint sets forth sufficient facts to support his claims against the State. Accordingly, and on the basis of the foregoing findings of fact and conclusions of law, the State's motion to dismiss is DENIED.

IT IS SO ORDERED.