The COLONNADE ONE AT OLD GREENWICH LIMITED PARTNERSHIP, et al.

v.

ELECTROLUX CORPORATION, et al.

Civ. No. B–88–336 (JAC).

United States District Court, D. Connecticut.

Aug. 8, 1991.

suant to an agreement dated May 14, 1985. Defendants operated die cast machines on the property that allegedly leaked hydraulic fluid containing high concentrations of polychlorinated biphenyls ("PCBs") onto the factory floor and then into the soil.

Plaintiffs have moved for summary judgment on Counts IV and V of their Third Amended Complaint (filed Apr. 14, 1989) ("Complaint"). Plaintiffs claim that they are entitled to judgment as a matter of law on the question of defendants' liability under the so-called Transfer Act, Conn.Gen. Stat. §§ 22a–134 to 22a–134d (Count V), and under Conn.Gen.Stat. §§ 22a–451 and 22a–452 (Count IV).

## DISCUSSION

### I.

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits … show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original). While the court must view the inferences to be drawn from the facts in the light most favorable to the party opposing the motion, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), a party may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir.1986) (Feinberg, C.J.),

Michael A. Zizka, Pepe & Hazard, Hartford, Conn., for plaintiffs.

Francis J. Brady, Gale K. Busemeyer, Murtha, Cullina, Richter & Pinney, Hartford, Conn., for defendants.

## AMENDED RULING ON MOTIONS FOR PARTIAL SUMMARY JUDGMENT

JOSÉ A. CABRANES, District Judge:

Pending before the court are plaintiffs' Motion for Partial Summary Judgment (filed Dec. 5, 1990) and plaintiffs' Supplemental Motion for Partial Summary Judgment (filed Mar. 13, 1991). After hearing extended oral argument, the court rendered an oral ruling on both motions. Here follows a written ruling substantially in the same form as that delivered orally on June 25, 1991.[1]

## INTRODUCTION

In this action, plaintiffs seek to recover from the defendants certain clean-up costs and other damages resulting from contamination of soil on certain property that was transferred by defendant Electrolux Corporation to plaintiffs on October 4, 1985 pur-

---

1. The original version of this ruling was entered on June 20, 1991. Defendants then filed a motion for reconsideration. After full briefing on the issues presented, I granted defendants' motion but substantially adhered to the ruling of June 20, 1991. However, for the sake of clarity, I now enter this *amended* ruling to reflect certain modifications occasioned by my ruling on defendants' motion for reconsideration.

*cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). The non-moving party may defeat the summary judgment motion by producing sufficient specific facts to establish that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Finally, " 'mere conclusory allegations or denials' " in legal memoranda or oral argument are not evidence and cannot by themselves create a genuine issue of material fact where none would otherwise exist. *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 445 (2d Cir.1980) (quoting *SEC v. Research Automation Corp.,* 585 F.2d 31, 33 (2d Cir.1978)).

## II.

■ Defendants have argued that plaintiffs are bound by the "as is" clause in the original Purchase Agreement, but I am persuaded that defendants cannot prevail on this contract argument.[2] The bargain which plaintiffs made on May 14, 1985 contemplated a transfer of property sometime in the near future. As of October 1, 1985, the legal environment changed. In addition, I find that plaintiffs' arguments concerning the special nature of environmental litigation and the *res judicata* effect of a court-sanctioned settlement to be persuasive as a means of distinguishing post-litigation settlement from pre-litigation contracting.

## III.

■ According to the version of the Transfer Act as it existed on October 4, 1985—which is the date of the closing on the property—an "establishment" is defined as "any establishment which generates more than one hundred kilograms of hazardous waste per month or which recycles, reclaims, reuses, stores, handles, treats, transports or disposes of hazardous waste which is generated by another person or municipality." Conn.Gen.Stat. § 22a–134 (1985). Defendants argue that the Transfer Act was intended to apply only to those establishments currently handling hazardous wastes as of October 1, 1985. Because defendants effectively ceased operation of the factory as of May 1985, defendants were not operating an establishment as of October 1, 1985, the effective date of the Act. I find defendants' interpretation of the Transfer Act to be strained and unduly restrictive. It cannot reasonably be inferred from the Connecticut legislature's use of the present tense in defining an "establishment" that the Transfer Act was intended to cover only those establishments currently in operation as of October 1, 1985 and not those that ceased operation only a few months earlier. It would thwart the obviously remedial purposes of the statute to restrict the Transfer Act's coverage in the way defendants have proposed.[3] There is no retroactivity problem presented by this interpretation of the Transfer Act, because it obviously applies only to transfers of property occurring after October 1, 1985. It is surely unfortunate for the defendants that the transfer of the Electrolux property occurred 3 days *after* the effective date of the Act. But as laws are passed, it is inevitable that they disrupt the best laid plans of those who, while anticipating one legal regime, find themselves forced by circumstances suddenly to operate within the context of another.

■ Defendants' argument that the hydraulic fluid containing PCBs was not "waste" because it was not intended to be leaked into the environment is unpersua-

---

2. Paragraph 8 of the May 14, 1985 Agreement reads in relevant part as follows:

Purchaser has had ample opportunity to have caused detailed examinations to be made of the surface and subsurface of said Premises, and takes the same "as is" on the date of this Agreement without any representations or warranties by the Seller as to all conditions including surface and subsurface environmental conditions....

3. The arguably draconian results of the 1985–version of the Transfer Act were effectively recognized and corrected by the Connecticut legislature when, in 1987, it amended the Act to exclude all "establishments" which ceased operation prior to May 1, 1967. *See* Conn.Gen.Stat. § 22a–134(3) (1990).

sive. PCBs are recognized as among the most dangerous substances known to environmental science; hydraulic fluids containing high concentrations of PCBs do not cease to be hazardous waste simply because defendants intended to keep the fluids from escaping into the environment and poisoning the soil. That is what a strict liability regime does; defendants are held liable for the costs whether or not they intended the result.

For these reasons, I find that the Electrolux factory was indeed an "establishment" within the meaning of § 22a–134 and that defendants were required to submit a negative declaration prior to the transfer of the property. There is no dispute that defendants failed to submit to plaintiffs a negative declaration, and this failure makes them "strictly liable, without regard to fault" for all clean-up and removal costs and for all direct and indirect damages resulting from any and all hazardous wastes that remained on the subject property at the time of the transfer—that is, on October 5, 1985. Plaintiffs' motion for partial summary judgment with respect to Count V is granted.[4]

### IV.

■ As to plaintiffs' motion with respect to liability under Conn.Gen.Stat. § 22a–452, I find that genuine issues of material fact exist that preclude the granting of partial summary judgment. Even were I to agree with plaintiffs that a finding of culpability is not required, some causal connection between defendants' actions and the contamination is necessary before defendants can be found liable under § 22a–452(a). On the

issue of causation, there is evidence to suggest that the floor of the die cast area was in good condition and that there did not appear to be any way for the hydraulic fluid containing PCBs to migrate through the floor to the soil. *See* Deposition of Brian W. Armet (Nov. 14, 1989) at 111, Exhibit 7 to Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Partial Summary Judgment (filed Jan. 30, 1991) ("Defendants' Memorandum"). Plaintiff never tested the soil prior to demolition of the factory building so there are reasonable grounds for a dispute concerning how and whether the PCB material had actually leaked through the floor. *See* Deposition of Joan M. Thomas (Oct. 25, 1989) at 110, Exhibit 6 to Defendants' Memorandum. Defendants have raised the possibility, supported by at least two affidavits, that the demolition and the various activities associated with the post-demolition soil sampling operation could have caused the PCB contamination of the soil. *See, e.g.*, Affidavit of Dr. Davis L. Ford (Jan. 23, 1991), Exhibit C to Defendants' Memorandum. In addition, whether or not defendants were "in control" of the premises at the time of the soil contamination is a genuine issue of material fact precluding the presumption of causation through the doctrine of *res ipsa loquitur.*

It is elementary that "on a motion for summary judgment the court cannot try issues of fact; it can only determine whether there are issues to be tried." *Schering Corp. v. Home Ins. Co.*, 712 F.2d 4, 9 (2d Cir.1983) (quoting *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1319–20 (2d Cir.1975)). For the foregoing reasons,

---

**4.** Defendants have raised the affirmative defense that plaintiffs' claims under the Transfer Act are barred by the applicable two-year statute of limitations. Even if I assume, without deciding, that the applicable statute of limitations is "two years from the date when the injury or damage complained of is discovered or in the exercise of reasonable care should have been discovered," Conn.Gen.Stat. § 52–577c(b) (Supp. 1990), defendants' negative declaration submitted on June 11, 1986 precludes them from arguing now that plaintiffs reasonably should have known of the contamination five days later. If, as defendants claim, they submitted a negative declaration on June 11, 1986 which,

after investigation, they believed to be correct, *see* Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Partial Summary Judgment (filed Jan. 30, 1991) at 16, it is simply unreasonable for them to claim that one week later, plaintiffs should have known that the soil was contaminated with PCBs. Plaintiffs argue that they learned of the PCB contamination "only days" before the complaint was filed on June 17, 1988. *See* Plaintiffs' Reply Memorandum of Law in Support of Plaintiffs' Motion for Partial Summary Judgment (filed Mar. 12, 1991) at 24. Plaintiffs' Transfer Act claim is not barred by the statute of limitations.

plaintiffs' motion for partial summary judgment with respect to § 22a–452 in Count IV is denied.

## V.

Finally, plaintiffs have filed a supplementary motion for partial summary judgment with respect to § 22a–451 in Count IV of the Complaint. On December 16, 1988, I denied defendants' motion to dismiss with respect to this same statutory provision. I concluded at that time that § 22a–451 provided for a private cause of action, because in 1979, the Connecticut legislature had amended section 22a–451(a) to change "costs incurred by the commissioner" to simply "costs incurred." I concluded that the clear thrust of this amendment was to allow recovery of costs incurred by private citizens through private suits. The parties have now brought to my attention three Connecticut Superior Court cases that have reached the opposite conclusion, interpreting § 22a–451(a) to mean that only the Commissioner of Environmental Protection may bring suit under this provision to recover costs and expenses incurred in treating contamination of the environment caused by hazardous wastes.[5]

██ Although I have carefully considered these Connecticut trial court decisions, I am not bound to follow them. The Connecticut Supreme Court has not yet had occasion to interpret § 22a–451(a), and in the absence of any direct decision by the state's highest court, a federal court must determine what it believes the state's highest court would find if the same issue were before it. *See Plummer v. Lederle Laboratories*, 819 F.2d 349, 355 (2d Cir.), *cert. denied*, 484 U.S. 898, 108 S.Ct. 232, 98 L.Ed.2d 191 (1987). After a full consideration of the record, including the grounds for my ruling denying defendants' motion to dismiss on December 16, 1988, I now believe that I was in error in concluding that § 22a–451(a) provided a private cause of action. The remaining three subsections of § 22a–451—which were created by the

1979 amendments on which I had relied in previously denying defendants' motion to dismiss—all refer explicitly to the rights and obligations of the commissioner: subsection (b) gives the commissioner the authority to contract with a third party to remove or mitigate the effects of the pollution; subsection (c) gives the commissioner authority to enforce contractual obligations by way of a civil suit pursuant to subsection (a); and, finally, subsection (d) establishes the so-called Emergency Spill Response Fund to provide funds to be used by the commissioner for the containment and treatment of pollution.

A court must look not only to particular statutory language but also to the design of the statute as a whole and to its object and policy. *See Crandon v. United States*, 494 U.S. 152, 110 S.Ct. 997, 1001, 108 L.Ed.2d 132 (1990). A single section of a statute, such as subsection (a), ought not to be read in isolation from its other provisions. *See In re Willington Convalescent Home, Inc.*, 72 B.R. 1002, 1012 (D.Conn. 1987), *aff'd*, 850 F.2d 50 (2d Cir.1988), *aff'd sub nom. Hoffman v. Connecticut Dept. of Income Maintenance*, 492 U.S. 96, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989).

The 1979 amendment *did* remove the specific reference to costs and expenses "incurred by the commissioner" in subsection (a), but this can be explained by the fact that it was redundant in light of the last sentence of the subsection which authorizes the attorney general, *upon request of the commissioner*, to bring a civil action to recover all such costs and expenses. *See* Conn.Gen.Stat. § 22a–451(a).

Finally, it is simply not reasonable to conclude that the Connecticut legislature provided a private cause of action under § 22a–451(a) while also providing a substantially identical private cause of action under § 22a–452. Indeed, it would make little sense for a citizen to sue under § 22a–452 when the possibility of one-and-a-half or even double damages exists under § 22a–451(a). To interpret § 22a–451(a) as

---

**5.** These cases are *Michael v. Kenyon Oil Co., Inc.*, 4 Conn.Super.Ct.Rpts. 447 (Mar. 22, 1989); *Bristol Shopping Plaza, Inc. v. Vigilante Cleaners*

*Inc.*, slip op. (Super.Ct. Jan. 12, 1989); *Connecticut Light & Power Co. v. Knight*, 3 Conn.Super.Ct.Rpts. 600 (June 16, 1988).

providing a private cause of action would render § 22a–452 both redundant and unnecessary. This would simply not be a reasonable interpretation of the statutory scheme. Plaintiffs' supplemental motion for partial summary judgment with respect to the claim under § 22a–451 in Count IV is denied.

## CONCLUSION

For the reasons stated, plaintiffs' motion for partial summary judgment (filed Dec. 5, 1990) is GRANTED with respect to Count V of the Complaint and DENIED with respect to the claim under § 22a–452 of Count IV of Complaint. Plaintiffs' supplemental motion for partial summary judgment (filed Mar. 13, 1991) is DENIED. Furthermore, treating defendants' memorandum of law in opposition to plaintiffs' supplemental motion for partial summary judgment (filed May 6, 1991) as a renewed motion to dismiss the claim in Count IV for recovery under § 22a–451, it is GRANTED upon full reconsideration of the entire record.

It is so ordered.